INDEMNITY MUTUAL MARINE ASSURANCE COMPANY, Limited, a Corporation, Appellant, v. POWELL & O'ROURKE GRAIN COMPANY, a Corporation, Respondent.*

St. Louis Court of Appeals. Opinion filed April 14, 1925.

1. **PRINCIPAL AND AGENT:** Scope of Authority: Insurance: Premiums: Insurance Agent Appointed Under Statute: Authority of Agent to Indorse Checks: Jury Question. In an action on an account stated where an insurance company seeks to recover from the insured the same premiums which insured had paid by checks given to the insurance company's general agent, appointed under the provisions of section 6315, Revised Statutes 1919, which checks were made payable to the order of the insurance company and indorsed and cashed by such general agent, *held* that there was evidence from which the jury might properly find that the general agent had authority to indorse such checks by writing plaintiff's name upon their back and that the trial court did not err in refusing to direct a verdict for the plaintiff.

2. ———: ———: ———: ———: Checks: Payment of Premiums: Wrongfully Indorsed by Agent: Effect. Where an insurance company's general agent, appointed under the provisions of section 6315, Revised Statutes 1919, was authorized to receive checks in

216 M. A.—43

payment of premiums, and having obtained the money upon them, the fact that he wrongfully indorsed the checks did not destroy the effect of the checks as payment by the insured, even though the agent failed to account to the insurance company for the money.

3. ———: ———: ———: ———: **Evidence: Custom of Agents to Indorse and Cash Premium Checks: Admissibility:** In an action by an insurance company to recover from insured the same insurance premiums which insured had paid by checks given to the insurance company's general agent which checks said agent had wrongfully indorsed and failed to account for the proceeds, evidence that it was usual and customary for general insurance agents appointed under the provisions of chapter 50, article 12, Revised Statutes 1919, to indorse and cash premium checks payable to their insurance companies, *held* admissible to interpret the powers given the company's agent.

---

*Headnote 1. Agency, 2 C. J., Section 733; Insurance, 33 C. J., Section 773; 2. Insurance, 32 C. J., Section 333 (Anno); 3. Insurance, 32 C. J., Section 134.

Appeal from the Circuit Court of the City of St. Louis.—
*Hon. William H. Killoren,* Judge.

AFFIRMED.

*Hugo Monnig, Jr.,* and *Taylor, Chasnoff & Willson* for appellant.

(1)   The court erred in admitting in evidence the checks marked "Defendant's Exhibits 3 and 4." These checks were payable to the order of plaintiff, a corporation, and bore what purported to be an indorsement by an agent. The burden was upon the defendant to prove the agent's authority to endorse. Worrell v. Roberts, 58 Mo. App. 197; Federal Discount Co. v. Becker, 138 Mo. App. 54; Wade v. Boone, 184 Mo. App. 88; Bank v. Blades, 247 S. W. 806; Jackson Paper Mfg. Co. v. Bank, 199 Ill. 151. Defendant failed to sustain this burden. Decker had no authority to endorse these checks. Kansas City Casualty Co. v. Bank, 191 Mo. App. 287; Gra-

ham v. U. S. Savings Institution, 46 Mo. 186; Jackson Paper Mfg. Co. v. Bank, 199 Ill. 151; Independent Oil Men's Ass'n v. Bank, 311 Ill., 278; Pluto Powder Co. v. Bank, 153 Wis. 324; Coleman v. Bank et al., 109 Wash. 80; Quigley v. Bank, 80 Mo. 289; Crahe v. Bank, 295 Ill. 375. (2) The court erred in admitting evidence of an alleged custom or practice of insurance agents to endorse and cash premium checks payable to insurance companies. Staroske v. Pulitzer Pub. Co., 235 Mo. 67; Mendenhall v. Sherman, 193 Mo. App. 684; Porterfield v. American Surety Co., 210 S. W. 119; Dietz v. Nix, 216 S. W. 791. (3) The court erred in refusing to direct a verdict for plaintiff on both counts of the petition at the close of defendant's evidence, and again at the close of all the evidence. 1. The answer pleaded payment. On this issue the defendant bore the burden of proof, which burden it failed to sustain. Groomer v. McMillan, 143 Mo. App. 612; Biscuit Co. v. Grocer Co., 143 Mo. App. 300; Griffith v. Creighton, 61 Mo. App. 1. 2. Where a debtor gives to his creditor's agent a check in the amount of the debt, payable to the order of the creditor, and the agent without authority endorses the check, and wrongfully receives and retains the proceeds: (a) The creditor cannot maintain a suit on the check against the bank. Bank v. Whitman, 94 U. S. 343; Grocer Co. v. Bank, 71 Mo. App. 132; Casualty Co. v. Bank, 191 Mo. App. 287. (b) The giving of the check does not constitute payment of the debt, and the creditor can maintain his suit against the debtor to collect the debt. Bank v. Whitman, 94 U. S. 343; Biscuit Co. v. Grocer Co., 143 Mo. App. 300; Grocer Co. v. Bank, 71 Mo. App. 132. 3. Where a bank pays a check of its depositor upon a forged or unauthorized endorsement, it is liable to the depositor for such payment. Bank v. Whitman, 94 U. S. 343; Grocer Co. v. Bank, 71 Mo. App. 132; Biscuit Co. v. Grocer Co., 143 Mo. App. 300; Lieber v. Bank, 137 Mo. App. 158; Wind v. Bank, 39 Mo. App. 72; Bank v. Insurance Co., 110 Mo. App. 62.

Sam B. Jeffries, A. E. Simpson, Paul F. Plummer and Arthur J. Freund for respondent.

(1) There was ample evidence upon which to base a finding that E. F. Decker had actual authority to endorse the checks mentioned in the evidence. This issue was left to the jury under proper instructions, and its finding upon that issue is conclusive. Decker's authority being established, payment to Decker was payment to the company. Mosby v. Commission Co., 91 Mo. App. 500; Sharp v. Knox, 48 Mo. App. 169; Ostend Western Road Machinery Co. v. Commercial Bank, 255 S. W. 585; Higbee v. Bank, 244 Mo. 411, 426; Edwards v. Thomas, 66 Mo. 468, 482; Hull v. Jones, 69 Mo. 587; Mitchum v. Dunlap, 98 Mo. 418; Werth v. Ollis, 61 Mo. App. 401; Johnson v. Hurley, 115 Mo. 513; Goessling Box Co. v. Cal Hirsch & Sons Mercantile Co., 251 S. W. 438; Compress & Warehouse Co. v. St. Louis Cash Register Co., 201 Mo. App. 201; Morrison v. Chapman, 140 N. Y. Supp. 700; Bernstein v. Sullivan, 119 N. Y. Supp. 317; Potter v. Sager, 171 N. Y. Supp. 438; McFadden v. Fallrath, 114 Minn. 85. (2) There was no error in the admission of evidence of a custom among insurance companies in the city of St. Louis that authorized their general agents to endorse checks payable to the order of said companies. 17 Corpus Juris 518; Kinney v. Metropolitan Street Railway Co., 261 Mo. 97; Foster v. K. C. Railways Co., 235 S. W. 1070; Raber v. Kansas City Railways Co., 204 S. W. 739; Piper v. Allan, 219 S. W. 98; Prunke v. Mo. & Kans. Telephone Co., 115 Mo. App. 36. (3) If the endorsement of Decker was unauthorized plaintiff, as well as defendant, could maintain an action against the banks for their action in paying said checks. That question, however, is not material in this case. Casualty Co. v. Bank, 191 Mo. App. 287; Morrison v. Chapman, 140 N. Y. Supp. 700; McFadden v. Fallrath, 114 Minn. 85.

BRUERE, C.—This action is on an account stated. The case was tried before the court and a jury and re-

sulted in a verdict and judgment for the defendant, from which judgment plaintiff prosecutes this appeal.

The petition is in two counts. The first count avers an account stated on the 18th day of June, 1918, for eleven hundred and seventy-four dollars and twenty cents, and the second count is based on an account stated on the 27th day of August, 1918, for eleven hundred and sixty-six dollars and twenty-nine cents. The defendant pleads payment.

The errors urged here go to the refusal of the trial court to direct a verdict for plaintiff, on both counts of the petition, at the close of all the evidence; and to the admitting of testimony over plaintiff's objections.

Briefly summarized the facts disclosed by the record are: The plaintiff is a foreign insurance company, organized under the laws of England and duly authorized to do business in the State of Missouri. The defendant is a Missouri corporation, having its place of business in the city of St. Louis, Missouri.

In compliance with the provisions of chapter 50, article 12, Revised Statutes 1919, the plaintiff filed with the Insurance Department of this State a notice of the appointment of E. F. Decker, as its resident agent for the transaction of its authorized business of insurance in Missouri, for the year ending February 1, 1919. Said requisition is in words and figures as follows:

"This is to certify that the Indemnity Mutual Marine Assurance Co., Ltd., of London, England, has appointed E. F. Decker of St. Louis, Missouri, agent for the transaction of its authorized business of insurance in the State of Missouri for the term ending February 1, 1919. Dated at New York, N. Y., this 16th day of January, 1918.

By APPLETON & Cox, Attorneys,
Street No. 3 South William St."

Decker became general agent for the transaction of plaintiff's authorized business of insurance in the State of Missouri, in March, 1916. As such agent he wrote

policies, signed them, delivered them and collected and remitted to the plaintiff the premiums for insurance written, less the commissions due him. He also made out, on the bill heads of E. F. Decker & Company, the bills for the premiums, transmitted these bills to plaintiff's customers and received payment for said premiums in cash and by checks made payable to his order or the order of the plaintiff assurance company. He endorsed these checks, deposited them in bank to his own account and remitted to the plaintiff the balance due it after deducting his commissions. There was no agent of the plaintiff, in the city of St. Louis, Missouri, who had superior powers to those given to Mr. Decker.

It appears that Decker, in February, 1918, on account of his failure to make remittances to plaintiff for premiums which he had collected for it, was not in good standing with plaintiff. This fact was intentionally concealed from the defendant by the plaintiff and defendant had no knowledge of it until after this controversy arose.

It further appears that the defendant placed all its insurance with Decker and that this business was the largest which the plaintiff had in the city of St. Louis, Missouri. On February 13, 1918, Decker wrote the plaintiff advising that the defendant was about to resume shipments of corn to Cuba; that the premiums on this business would amount to approximately twenty thousand dollars during the year, and asking the plaintiff to advise him whether he should write said insurance as in the past. In this letter Decker further said:

"We will see to it that checks in payment of their accounts are made payable to you and forwarded to your office at the end of each month. You may credit us with the commission each month, which will have the effect of reducing the amount of our indebtedness."

After the receipt of the above letter, and in March, 1918, Oscar W. Smith, plaintiff's American manager, came to St. Louis, and in company with Mr. Decker called upon Mr. Powell, president of defendant, and requested

him to make out the checks of his company, for premiums due the plaintiff, payable to the order of the plaintiff. Mr. Powell agreed to this request and stated that he would give orders to have the checks made out that way. Mr. Smith told Mr. Powell in said conversation that Mr. Decker was to continue as the representative of the plaintiff.

It further appears that after the conversation in March, 1918, the plaintiff instructed Decker to forward all checks, received by him from the defendant for premiums due plaintiff, to its managers, Appleton & Cox, in New York. These instructions were not made known to the defendant by the plaintiff and defendant had no knowledge of them.

Thereafter, the defendant continued to place its insurance with plaintiff through Decker, plaintiff's agent. On June 18, 1918, Decker made out and presented a bill to the defendant for premiums due plaintiff in the sum of eleven hundred and seventy-four dollars and twenty cents; and on August 27, 1918, he presented to the defendant a similar bill in the sum of eleven hundred and sixty-six dollars and twenty-nine cents. In payment of said bills, and pursuant to plaintiff's instructions, the defendant delivered to Decker, on said respective dates, its two checks for said amounts payable to the order of the plaintiff. Mr. Decker endorsed the checks in the name of the plaintiff by himself as agent, drew the money on them and failed to account to plaintiff for the proceeds. Said checks were subsequently paid by the banks upon which they were drawn and the amounts thereof charged to the account of the defendant, the drawers.

The plaintiff seeks in this action to recover for the same premiums for which the said checks were given by defendant to Decker, plaintiff's agent.

Against the objections of the plaintiff the trial court permitted the defendant to prove by several witnesses that it was usual and customary for resident insurance agents, appointed under the provisions of chapter 50,

article 12, Revised Statutes 1919, in carrying on the business intrusted to them, to endorse and cash premium checks payable to their insurance companies.

Touching the assignment of error that the trial court erred in refusing to direct a verdict for the plaintiff, it is contended that the checks given to Decker do not constitute payment of the premiums sued for, and that, therefore, the defendant failed to sustain its defense to this action.

In support of said contention it is urged that upon the undisputed evidence in this case Decker had no authority, expressed or implied, to endorse and cash the checks in question.

We cannot subscribe to this contention. The evidence discloses that the plaintiff appointed Decker its agent for the transaction of all its business of insurance in this State. He was in fact plaintiff's general manager in sole charge of its said business, and the only one whom the public knew. Under the provisions of section 6315, Revised Statutes 1919, the plaintiff was compelled to transact its insurance business in this State only through Decker, its lawfully constituted and licensed resident agent.

In view of the authority conferred upon him by his said appointment, and by said section, Decker was a general agent of the plaintiff, and all his actions done in the scope of the business intrusted to him are binding on the plaintiff. "And as between the principal and third persons the mutual rights and liabilities are governed by the apparent scope of the agent's authority, which is that authority which the principal holds the agent out as possessing or which he permits the agent to represent that he possesses and which the principal is estopped to deny, and the principal will be bound by all acts of the agent performed in the usual and customary mode of doing the particular business, although he may have acted in violation of private instructions." [2 Corpus Juris, p. 570, sec. 211.]

Applying the above rule to the facts and circumstances of this case we think there was evidence from which a jury might properly find that Decker had authority to endorse the checks in question by writing plaintiff's name upon their back.

But irrespective of the question whether or not Decker had authority to endorse the checks, under the facts adduced in this case the delivery of the checks to Decker, in payment of the bills rendered by him, and the subsequent payment of the same by the bank out of the funds of the defendant, amounted to a payment by the defendant and operated to discharge the defendant from liability of the debt sued on herein.

It is conceded that Decker had authority to receive the checks in question in payment of the bills rendered by him to defendant. While the checks did not, until paid, amount to payment of the debt, they did when paid extinguish defendant's liability.

In Burnstein v. Sullivan, 134 App. Div. 625, 119 N. Y. Supp. 317, the question under consideration was decided and the rule stated:

"Where a debtor delivers his check to the creditor or his agent duly authorized to receive it, and has funds in the bank to meet the checks, the transaction as between the debtor and the creditor should be treated as a payment precisely as though cash had been paid, even though the agent forges an endorsement and steals the money."

The question was again passed upon in Morrison v. Chapman, 140 N. Y. Supp. 700, 1. c. 704. We quote approvingly from that case:

"It is no answer to plaintiff's claim to say that Cooper had no authority to indorse defendants' name upon the checks, and that his act in doing so was without his actual or apparent authority. If money had been paid to him, and he had stolen the money, that act would still have been without the scope of his authority, and still the loss would have fallen upon defendants and not upon

the plaintiff. 'The principal cannot so easily evade liability for the acts of his agent.' [Birkett v. Postal Telegraph Cable Co., 107 App. Div. 115, 117, 94 N. Y. Supp. 918, affirmed 186 N. Y. 591, 79 N. E. 1101.]

"The underlying principle, which is well settled, is that, having put Cooper in a position to perpetrate the wrong, the defendants, and not plaintiff, must suffer the loss. [Wilmerding v. Postal-Telegraph Cable Co., 118 App. Div. 685, 103 N. Y. Supp. 594; affirmed, 192 N. Y. 580, 85 N. E. 1118; Birkett v. Postal-Telegraph Cable Co., supra.]"

Again in Sage v. Burton, 84 Hun, 267, l. c. 270, in a similar case, it was said:

"The plaintiffs having authorized the agent to receive the check, and thus removing it beyond the control of the defendant, took, as between them and the defendant, the risk of the acts of their own agent; all the risk that the defendant took in the matter was that of establishing that the agent had power and authority to take the check in settlement, and that the drawer had funds in the bank with which to pay it on presentment. He did not even take the risk of a forged indorsement. That, probably, was the risk of the bank.

"The jury under the charge of the court have, we think, found, upon sufficient evidence, that the agent in this matter was authorized by the principal to receive this check, and that, coupled with its finding of payment of the check, operated to discharge the defendant from liability. [Carroll v. Sweet, 128 N. Y. 22, 27.]

"If it be held that Abbott in this transaction was not the *alter ego* of the plaintiffs, and had no authority to indorse this check, yet, if he was authorized by the plaintiffs to receive this check from the defendant, any misappropriation of its proceeds by him is at the risk of the party who set him in motion and put it in his power to perpetrate the wrong; such party must suffer rather than the party who is in no wise accountable for, and has no control of the perpetration of the wrong." [See, also, McFadden v. Fallrath, 114 Miss. 86.]

The question under consideration does not seem to have been decided by the appellate courts of this State. We think the rule stated in the above cases is sound and should be applied to this case. We have been cited to no authority laying down a contrary rule, nor have we been able to find one.

We hold that Decker having been authorized to receive the checks, and having obtained the money upon them, the fact that he wrongfully endorsed the checks did not destroy the effect of the checks as payment by the defendant, even though he failed to account to plaintiff for the money.

Touching the second assignment of error, we think the evidence objected to was admissible for the purpose of interpreting the powers given Decker as plaintiff's agent. However, this assignment of error, in the view we take of this case, is without importance. It follows that the judgment should be affirmed. The Commissioner so recommends.

PER CURIAM:—The opinion of BRUERE, C., is adopted as the opinion of the court. The judgment of the circuit court of the city of St. Louis is accordingly affirmed. *Daues, P. J.,* and *Becker* and *Nipper, JJ.,* concur.