### Hart *et al. v.* Moore.

(Division A.   Jan. 7, 1935.)

[158 So. 490.   No. 31217.]

Shaw & Pilgrim and **R. T. Hilton**, .all of Jackson, for appellants.

**D. C. Enochs**, of Jackson, for appellants.

Louis C. Hallam, of Jackson, for appellee.

844

**Cook, J.,** delivered the opinion of the court.

This is an appeal from a decree of the chancery court of Hinds county awarding the appellee a recovery against the appellants of the sum of six hundred fifty-one dollars and twenty-five cents, with interest.

The appellee filed his original bill against the appellant Lee R. Hart and his nephew, John Hart Asher, alleging that on the 1st day of November, 1932, he was the owner of a check, payable to himself, which had been issued by the board of trustees of the Mississippi State Penitentiary in the amount of nine hundred fifty-one dollars and twenty-five cents; that there were no funds in the depository of the penitentiary board available for the payment of this check; that he thereupon entered into negotiations with the appellant Lee R. Hart to secure a loan from him of three hundred dollars on the security of said

check; that Hart agreed to and did make to appellee the three hundred dollar loan, and took his promissory note therefor, payable on demand, and accepted as collateral security for said note the said penitentiary check, which the appellee then indorsed in blank and delivered to him; that thereafter, on or about November 4, 1932, the said Hart transferred and assigned said penitentiary check to the said John Hart Asher, who thereupon collected said check from the bank upon which it was drawn, and placed the proceeds to the credit of the said Lee R. Hart in the Deposit Guaranty Bank & Trust Company of Jackson, Mississippi.

The bill further charged that it was understood and agreed between the appellee and the appellant Hart that the said Hart should cash the penitentiary check as soon as funds were available for that purpose in the depository; that, after deducting from the proceeds of said check the amount of the three hundred dollar loan, he should account to the appellee for the balance thereof; that the said Hart became a trustee of the said penitentiary check and the proceeds thereof, and held the same in trust, first, for the payment of the said loan, and then for the purpose of accounting to the appellee for the balance of the proceeds thereof; that, upon the transfer and assignment of said penitentiary check to the said John Hart Asher, the said Asher himself became a trustee of said check and the proceeds thereof jointly with the said Hart; and that it was their duty to account to the appellee for the proceeds thereof; but that, notwithstanding such facts, the said Hart and Asher failed to carry out their trust by accounting to appellee for the balance of the proceeds of said check after paying the amount of said loan. The bill prayed for a decree against the said Hart and Asher for the sum of six hundred fifty-one dollars and twenty-five cents, being the balance of the proceeds of said penitentiary check after pay-

ing therefrom to the said Hart the sum of three hundred dollars in satisfaction of appellee's note to him.

The defendant Asher answered the bill of complaint and denied any knowledge of the ownership of the check and any connection therewith other than the mere collection thereof as the agent of Hart and the deposit of the proceeds to the credit of the said Hart in the Deposit Guaranty Bank & Trust Company.

The appellant Hart's answer to the bill, as amended, admitted the making of the loan to appellee, and the acceptance by him of the penitentiary check as collateral security therefor, but denied that he had transferred and assigned said check to his codefendant Asher, or that he had failed to account to appellee for the balance of the proceeds thereof, and alleged that he had paid said balance to appellee. It was further alleged that the appellee was estopped to deny that he had received the balance of the proceeds of said penitentiary check, because of his alleged negligence in selecting an agent to receive it, in that he (the appellee) had directed the said Hart to pay the balance of the said check to one Charles W. Crisler, and that on November 4, 1932, he had delivered to the said Crisler, as agent for appellee, his check payable to the order of appellee, on the Deposit Guaranty Bank & Trust Company of Jackson, Mississippi, for the sum of six hundred fifty-one dollars and twenty-five cents, at which bank the said Hart then had on deposit to his credit and checking account more than the sum of six hundred fifty-one dollars and twenty-five cents; that the said Crisler, on November 7, 1932, without the knowledge of said bank, indorsed the name of appellee on the said Hart check as the signature of appellee, and presented the same to said bank for payment, and received therefor a cashier's check payable to the order of the appellee for the sum of six hundred twenty-six dollars and twenty-five cents, and also the sum of twenty-five dollars in cash, and that later, on November 9, 1932, the

said Crisler, without the knowledge of said bank, indorsed the name of the appellee, John P. Moore, on said cashier's check as the signature of appellee, and presented the same to said bank for payment, and received from said bank therefor the sum of six hundred twenty-six dollars and twenty-five cents; that the said bank paid both the check for six hundred fifty-one dollars and twenty-five cents and the cashier's check for six hundred twenty-six dollars and twenty-five cents, believing that they had been indorsed personally by the appellee and that the indorsements were the genuine indorsements of the appellee; and that the said bank had charged the amount of said check for six hundred fifty-one dollars and twenty-five cents to the account of said Hart therein.

It was further alleged that, after complaint had been made by the appellee that the appellant Hart had not paid to him the said sum of six hundred fifty-one dollars and twenty-five cents, the said Crisler advised that he was authorized by the appellee to do all that he had done in connection with said checks, and that he had paid to the appellee personally the said sum of six hundred twenty-six dollars and twenty-five cents, and retained the difference of twenty-five dollars as a sum due him by appellee; that the indorsement by Crisler of the name of the appellee on said check was so perfect an imitation of the signature of appellee as to defy experts to determine whether the signature was genuine; that whether the said Crisler was authorized to indorse the check or not the appellee was estopped to deny it, because he had authorized the said Crisler to receive from Hart the said check for six hundred fifty-one dollars and twenty-five cents, knowing at the time that Crisler was unreliable and likely to do just what he had done, and that he knew that Crisler had been an inmate of the state penitentiary on a conviction of embezzlement, that he had been disbarred from the practice of law for perjury

committed in the defense of the embezzlement charge, and that he was addicted to drinking intoxicants and was hard pressed financially. It was further charged that the appellee knew that Crisler could sign the name of appellee so perfectly that it would defy handwriting experts to determine whether the appellee or Crisler had written the name; that while Crisler was in the state penitentiary he transacted business for the appellee, who was an employee of that institution, and that, while he was in said penitentiary, Crisler had many times signed the name of appellee to papers so perfectly that such signature passed as the genuine signature of appellee among those most familiar with it. It was further averred that, when the appellee authorized Crisler to receive the check, the bank was authorized by law to pay the said checks, and each of them, on the indorsement of the same by Crisler, for the reason that the bank was without knowledge or notice that Crisler was not authorized to indorse and cash the same, and that, if the appellant Hart were required to now pay the said sum of six hundred fifty-one dollars and twenty-five cents to appellee, he would have been required to pay said sum twice.

The cause came on for hearing in the lower court on the bill, answer, and proof, and, after a considerable amount of evidence had been introduced by the respective parties, the court, of its own motion, entered an order reciting that it appeared to the court from the pleadings and evidence that the Deposit Guaranty Bank & Trust Company of Jackson, Mississippi, was a necessary party defendant to avoid circuity of action and multiplicity of suits, and declining to proceed further with the cause until the appellee should have amended his bill of complaint so as to make said bank a party defendant, and directing that the bill should be dismissed without prejudice upon the failure to so amend within thirty days.

Thereafter, within the time allowed, the appellee filed an amended bill of complaint against the said Lee R. Hart, John Hart Asher, and the Deposit Guaranty Bank & Trust Company, incorporating therein all the allegations of the original bill, and further alleging that at the time of the transactions in question the said Lee R. Hart was an officer, and the chairman of the board of directors, of the defendant bank, while John Hart Asher was one of its paying and receiving tellers and was acting in that capacity; that, after the said Lee R. Hart and John Hart Asher had cashed the said penitentiary check, and while they held the proceeds thereof in trust for the named purposes, they deposited the entire proceeds thereof to the personal account of the said Hart in said bank, subject to his check; that the said Hart thereupon drew a check on said bank for the sum of six hundred fifty-one dollars and twenty-five cents, payable to the order of appellee and placed said check in the hands of Charles W. Crisler, a former practicing attorney in the city of Jackson, with whom all the defendants had long been acquainted, and who, to their knowledge, was a person of untrustworthy character, who had been convicted of embezzlement, grand larceny, and receiving money under false pretenses, and who had been sentenced to the state penitentiary for a period of years; and that the said bank, through its officers and agents, had knowledge of the trust character of the said penitentiary check and the proceeds thereof so deposited to the account of Hart at said bank; and that it became the duty of said bank to take proper precautions to see that the said sum was properly applied in execution of said trust.

The bill of complaint further alleged that the appellee had not been acquainted with Charles W. Crisler until after he was confined in the state penitentiary, where the appellee was employed in an official capacity; that the said Crisler, by his intelligence and affiable manner, had induced appellee to believe that he was innocent of the

charges of which he had been convicted; that, after the said Crisler had been pardoned by the governor of the state and had, as appellee believed, resumed the practice of law in the city of Jackson, he secured the services of Crisler in negotiating and consummating the said loan of three hundred dollars from Hart. The bill further charged that Crisler had no authority to indorse appellee's name on said check for six hundred fifty-one dollars and twenty-five cents, and charged, on information and belief, that he had forged appellee's name on the back of said check for six hundred fifty-one dollars and twenty-five cents, and presented the same to the defendant bank and its teller, the said John Hart Asher, and had requested the said Asher to O. K. the same for a cashier's check for said sum in favor of appellee; that thereupon the defendant Asher, acting for said bank, without ascertaining or taking any steps to ascertain whether the signature on the back of said check was the genuine signature of appellee, and then knowing the character of Crisler and that he was untrustworthy, negligently and wrongfully approved said check and issued to Crisler the sum of twenty-five dollars in cash and the said cashier's check for six hundred twenty-six dollars and twenty-five cents, payable to the order of appellee, and charged the amount of the check to the account of the said Lee R. Hart in said bank; that the said Crisler then wrongfully converted to his own use said sum of twenty-five dollars in cash, and held the cashier's check for several days and then forged the appellee's name on the back thereof and presented it to the defendant bank and the said Asher, its teller, and requested payment thereof, and that the said bank and the said Asher then wrongfully and negligently, without ascertaining or taking any steps to ascertain whether the indorsement of the payee's name thereon was the genuine signature of appellee, cashed the check and paid to Crisler the sum of six hundred twenty-six dollars and twenty-

five cents in cash, which sum he (Crisler) wrongfully converted to his own use.

The bill further charged that Crisler was not the agent of appellee for the purpose of indorsing or cashing the Hart check or for the purpose of securing the cashier's check or receiving the proceeds of either of said checks, as all the defendants knew or by the exercise of reasonable care could have ascertained; that the appellee did not know of these matters until long after the transactions had taken place, whereupon he immediately repudiated the same and denounced the signing of his name on the back of said checks as unauthorized and forgeries; that it was the duty of all the defendants to preserve and protect said trust fund, the proceeds of the penitentiary checks placed to the credit of said Hart for the use and benefit of the appellee, and not to allow it to be diverted from the purposes of said trust, and that it was their duty to refuse to pay said check except upon the genuine indorsement of appellee, which duties they neglected and failed to perform, and as a result thereof the appellee had not been paid the balance of the penitentiary check due him; that the said defendant bank also became a trustee of said funds equally with the said Hart and Asher, and was equally liable with them to account to appellee therefor; that the said Hart check had not in fact been paid, and that the status of his account in said bank had not been changed by the payment to Crisler; that the said bank should be required to credit Hart's account in said bank with the sum of six hundred fifty-one dollars and twenty-five cents, and that said funds so credited should be impressed with a trust in favor of appellee, and that said defendants should be required to pay appellee the said sum with interest.

Each of the defendants interposed separate demurrers to the amended bill; the substance of the demurrers of Hart and the bank being to the effect that there was no

equity on the face of the bill, and that the bill of complaint showed that Crisler was the agent of the appellee to receive and handle the alleged trust fund, and therefore by virtue of the provisions of section 3828, Code of 1930, the bank was not required to take notice of, or to make any inquiry as to any lack of, or limitation upon, the power of the said Crisler in presenting said checks, and was therefore relieved of any liability on account of any indorsement, either unauthorized or forged, and that as to the said Hart the delivery of the check to the said agent of appellee and the payment thereof by the bank, without any notice or knowledge by it of any lack of or limitation upon the power of said agent, constituted payment and full discharge of his obligation to appellee. These demurrers were overruled, but the separate demurrer of John Hart Asher on different grounds was sustained, and he thereupon disappeared from the litigation.

The defendants Lee R. Hart and the Deposit Guaranty Bank & Trust Company then filed separate answers to the amended bill, which were substantially the same as the answer of defendant Hart to the original bill, which has already been set forth herein somewhat in detail. The defendant Hart made his answer a cross-bill against the defendant bank, and prayed that, if he should be required to pay the appellee the said sum of six hundred fifty-one dollars and twenty-five cents, he be granted a decree over against the bank for said sum.

As to the relations of the several parties mentioned in the bill of complaint, and the connection and dealings of each of them with the several checks, and as to other facts alleged, the evidence fully supports the charges of the bill, and this evidence will not be here stated, for the reason that the substantial averments of the bill have already been set forth herein. Likewise, upon the whole evidence the chancellor was fully warranted in rejecting evidence offered by the appellants tending to show that

appellee had received the proceeds of the checks, either by payment to him by Crisler or otherwise. There was evidence to the effect that, at the time the loan by Hart to appellee was consummated in the banking house of the appellant bank, Hart asked the appellee where he should send the balance due him when it was collected, and that, in reply, appellee stated that he did not know what his address would be, but that Crisler would know his address, and that he could deliver the check for the balance due him to Crisler.

The first assignment of error presented on behalf of appellant bank is that the court below erred in requiring, of its own motion, the original bill to be amended so as to make the said bank a party defendant. The rights of all the parties to this suit arise from one common source, that is, the penitentiary check which was pledged with with the appellant Hart, and the proceeds thereof deposited in the appellant bank, and to save a multiplicity of suits and circuity of action equity has jurisdiction where the interests of all the parties "have a common origin, or flow from the same fountain, or radiate from the same center, or have a common connecting link." If the bank were not a necessary party to this suit, it was certainly a proper party, and it is not in a position to interpose objections to the suit other than by presenting such defenses to the merits as it may have.

The next point that arises in orderly consideration is the contention of the bank that, by virtue of the provisions of section 3828, Code of 1930, it was not required to take notice of or to make any inquiry as to any lack of, or limitation upon, the power or authority of appellee's agent to indorse the payee's name thereupon, and receive payment thereof. The said section 3828 reads as follows: "A bank dealing, whether to its own benefit or otherwise, with, through or under any person, who is or may be an agent, trustee, guardian, executor, administra-

tor, or other fiduciary, or a corporate officer, agent or employee, or a partnership member or representative, shall not be deemed to have notice of or be obliged to inquire as to any lack of or limitation upon the power of such person by reason in and of itself, either of the fact that such person has executed in his representative capacity and is himself the payee or endorsee of any check, bill, note or other promise or order, or of the use of descriptive words in connection with his deposit account or accounts, any transfer, certificate or memorandum thereof, or in connection with any signature or endorsement of such person."

This section has no application to the signature of a principal forged by his agent. Omitting reference to other provisions which bear no analogy to the facts here involved, this section provides that a bank shall not be deemed to have notice of or be obliged to inquire as to any lack of or limitation upon the power of an agent, by reason in and of itself that such agent has executed in his respective capacity and is himself the indorsee or payee of an instrument, or has used descriptive words in connection with any signature or indorsement thereon; but Crisler, appellee's agent to receive the said check, did not execute and was not the payee or indorsee thereof, and did not use any descriptive words in connection with any signature thereon or indorsement thereof.

It is further contended that the failure of appellee to receive the proceeds of the Hart check was the direct, sole, and proximate result of his own negligence in selecting an unreliable and untrustworthy agent to receive the check, and that, by reason of this negligence, both Hart and the bank are relieved of any liability to him, and further that, by reason of the negligence of appellant Hart in delivering the check to one known to him to be dishonest and unreliable, the bank is released of any liability to Hart. In support of this contention, the appel-

lant bank relies strongly on the case of Young v. Grote, 4 Bing. (Eng.) 253, but the doctrine of estoppel by reason of negligence as announced in that case has been expressly repudiated in this court in Simmons v. Atkinson & Lampton Co., 69 Miss. 862, 12 So. 263, 264, 23 L. R. A. 599 wherein Judge Cooper speaking for the court said: "The maker of a bill of exchange is not bound to act upon the supposition that forgery will be committed merely because an opportunity is afforded by the character of the paper he puts out. In no relation of life do men conduct their affairs as though crime will be committed whenever it may be. It cannot be negligence to do that which can injure no one unless some one else shall commit a felony, and under circumstances in which no duty is imposed not to do the act. A bailee of goods, who negligently exposes them so that they may be stolen, would be liable to the bailor if they are stolen, but this is because he is under duty to the owner not to expose them. But if one negligently keeps his own property, and it is stolen, he does not forfeit his right to reclaim it from a purchaser from the thief, because, as to such person, he is under no duty. So one who issues negotiable paper is under liability only to those who take the contract he has made. He assumes no obligation of another contract, though it may be written on the same paper, and is equally free from liability if the agreement he has made is materially changed; for the agreement, as changed, is no more his than if all its terms were forged."

In the case at bar both Hart and officers of the bank, and particularly the employee who cashed the checks without making any sort of inquiry or investigation as to the genuineness of the signature of the payee indorsed thereon, knew as much, and probably more, about the character and past record of Crisler, than the appellee. The law does not presume that men will act dishonestly

or that forgery will be committed, and the duty of determining whether forgery has been committed rests primarily upon the bank which pays a check. The delivery of the check in question to an agent who proved to be dishonest merely created a condition which was followed by the criminal act of forgery, and the failure of the bank, upon which the duty primarily rested to make an investigation as to the genuineness of the indorsement, must be treated as the direct and proximate cause of the loss. In addition to the Simmons Case, supra, which in effect announces this doctrine, there are many cases from other jurisdictions which announce substantially the same doctrine, particularly with reference to the rights and duties of the drawer of a check; and the same rule will apply in determining the effect of any alleged negligence of a payee in selecting an untrustworthy agent to receive a check. In the case of Exchange National Bank v. Bank of Little Rock (C. C. A.), 58 F. 140, 142, 22 L. R. A. 686, Judge Sanborn said: "But when the drawer has issued a draft or note complete in itself, but in such a form as to be easily altered without attracting attention, and it is afterwards fraudulently raised by a third person, without his knowledge or authority, and then bought by an innocent purchaser, it is not his negligence, but the crime of the forger, that is the proximate cause of the loss. Forgery and consequent loss cannot be said to be the natural or probable consequence of issuing a draft inartificially drawn. The presumption is that dealers in commercial paper are honest men, and not forgers, and that such paper will not be changed. It will not do to say that every one whose negligence invites another to commit a crime is liable to a third party for the loss the latter sustains thereby."

In the case of United States C. S. Co. v. Central Manufacturing D. Bank, 343 Ill. 503, 175 N. E. 825, 829, 74 A. L. R. 811, the rule is announced that the drawer of a

check does not "owe the duty to his banker to employ none but honest clerks who will not steal his checks and commit forgeries by means of them. When he has drawn his check payable to the order of the payee named, he owes the drawee no other duty, and the risk of the authenticity of the indorsement on which the drawee pays the check is that of the drawee."

In the case of Shepard & Morse Lumber Co. v. Eldridge, 171 Mass. 516, 51 N. E. 9, 14, 41 L. R. A. 617, 68 Am. St. Rep. 446, the court said: "We are of opinion that the holder of an unindorsed check, payable to his own order, is under no legal obligation to the drawer to exercise care as to how the check shall be kept, or to whom he shall commit its custody, or to see to it that the check shall not be put in circulation by the forgery of his indorsement, so long as he acts honestly, without collusion. Such a holder is not deprived of his remedy against the drawer by merely negligently intrusting such a check to a clerk who, due care would have told him, was dishonest, and thus giving the clerk an opportunity to commit crime. He has the right to assume that his clerk will not commit a crime, and to rest upon the presumption that he has not stolen or forged, and will do so; and he is under no legal obligation either to the drawer of the check or to the public to see to it that the check is not put in circulation with a forged indorsement."

The above-quoted language of the Massachusetts court to the effect that the holder of an unindorsed check, payable to his own order, is under no legal obligation either to the drawer or drawee of the check or to the public to see that the check is not put in circulation by a forged indorsement was approved and adopted by the Illinois court in the case of Crahe v. Mercantile Trust & Savings Bank, 295 Ill. 375, 129 N. E. 120, 12 A. L. R. 92. To the same effect, see, also, the cases of Jordan Marsh Co. v. National Shawmut Bank, 201 Mass. 397, 87 N. E. 740, 22 L. R. A. (N. S.) 250; Bristol Knife Co. v. First Na-

tional Bank, 41 Conn. 421, 19 Am. Rep. 517; Crawford v. West Side Bank, 100 N. Y. 50, 2 N. E. 881, 53 Am. Rep. 152; Grand Lodge v. State Bank, 92 Kan. 876, 142 P. 974, L. R. A. 1915B, 815; Dodge v. National Exchange Bank, 20 Ohio St. 234, 5 Am. Rep. 648; Harmon v. Old Detroit National Bank, 153 Mich. 73, 116 N. W. 617, 17 L. R. A. (N. S.) 514, 126 Am. St. Rep. 467; Detroit Piston Ring Co. v. Wayne County, etc., Bank, 252 Mich. 163, 233 N. W. 185, 75 A. L. R. 1273; National Bank v. Nolting, 94 Va. 263, 26 S. E. 826.

Under the doctrine of these cases, the liability of the appellant bank to make good any loss sustained by the maker of the check on account of the payment thereof by the bank on a forged indorsement of the payee is apparent, and it only remains to consider the primary liability, if any, of the maker of the check to the payee thereof.

Upon the delivery of the penitentiary check to appellant Hart as collateral security for the payment of appellee's note to him, Hart held it in trust, and, after the collection of the check, he held its proceeds as a trust fund, first, to pay himself the three hundred dollar loan, and then to pay the balance of six hundred fifty-one dollars and twenty-five cents to the appellant, and this balance continued as a trust fund after it was deposited in the bank to the personal credit of Hart. In the language of section 2679, Code of 1930, the forged signature of the payee of the check which was issued to the appellee was "wholly inoperative," and the payment of the check on the forged indorsement of the payee was not in legal effect a payment out of Hart's account, but a payment out of the bank's funds. As said in Federal Land Bank v. Collins, 156 Miss. 893, 127 So. 570, 573, 69 A. L. R. 1068, the payment of the check on the forged indorsement of the payee "did not diminish the funds of the drawer in the bank, or put money in the pocket of the person entitled to the payment. The state of the account was the same after the pretended payment as it

was before." The appellee has not been paid the balance due him, and in legal contemplation the appellant Hart still holds this balance as a trust fund and is liable to account to the appellee therefor. When the bank paid this check on a forged rather than the genuine signature of the payee of the check, it was without authority to charge the amount thereof to the account of the maker, and, if it has done so, it must either pay the amount to the rightful payee, or fully reimburse the maker upon his payment of the same to the rightful owner thereof. The decree of the court below adjudicated and fully protected the rights of all the parties in accordance with the views herein expressed, and will therefore be affirmed.

Affirmed.