## Brown *v.* McAdory, et al.

No. 40207          September 24, 1956          89 So. 2d 597

*O. B. Triplett, Jr.,* Forest, for appellant.

*Roy N. Lee,* Forest, for appellees.

HALL, J.

The appellant is the owner and operator of a used car lot in the City of Oakland, California. On or about August 8, 1952, one Christian E. Paull at about one o'clock P.M. came to this used car lot and found in charge only one person, James L. Barrow. Paull looked over the used cars displayed for sale and picked out a 1951 Chevrolet automobile which he expressed a desire to purchase. He told Barrow that his wife was at a beauty parlor a short distance away and asked for the privilege of carrying this automobile for inspection by his wife so as to ascertain whether it pleased her. Barrow had no other one present at the time to leave in charge of the lot or to accompany Paull. Brown, the owner of the lot, being out of the city at that time, Barrow entrusted the automobile to Paull and he drove it away. He never returned with it. At about 4:30 P. M. Barrow became suspicious and at about 6:00 or 7:00 P. M. he called the police, who refused to make any effort to catch Paull until formal charges were filed against him. After Brown's return to the lot he filed a formal charge at about 10:00 P.M., but the police were unable to locate Paull, and the matter was turned over to a special agent of the Federal Bureau of Investigation, and the automobile was finally located some time later. Paull drove the car to Atlanta, Georgia, and on September 8, 1952, Paull, in company with a man who claimed to be Harvey M. Wilson, went to the office of an attorney at law in Atlanta, who knew neither of them and who at their request prepared a bill of sale for this automobile from Wilson to Paull. Wilson gave the attorney a street address in Atlanta where he claimed he resided, but he was not listed in the city directory nor in the telephone book, and after the execution of the bill of sale Wilson passed out of the picture. Paull registered the automobile in Atlanta and obtained a Georgia tag for it. He then drove to Forest, Mississippi, and sold the car to J. T. McAdory, who was engaged at the time as a dealer in

automobiles. Before buying the car McAdory telephoned the attorney at Atlanta who had prepared the bill of sale and employed him to investigate the records and ascertain whether there was any recorded lien against the car. He received a report from the attorney three or four hours later, by telephone, that there was no recorded lien against the car, and thereupon McAdory concluded the deal for the purchase of the car from Paull. Subsequently McAdory sold the car to Hammons. Later the Federal Bureau of Investigation located the car and subsequently this suit was brought by Brown against McAdory and Hammons for unlawful conversion of the automobile who demanded damages against them in the sum of $1,650.00.

McAdory and Hammons defended the suit and filed a plea of recoupment seeking to recoup the amount of damage in the value of the car upon the theory that Brown's agent was guilty of negligence in entrusting the automobile to Paull for use and trial without a representative accompanying him, it being alleged that there was danger that Paull would not return the car and would dispose of it to an innocent purchaser. They also filed a counter claim for damages based upon the same theory. Issue being joined the case was submitted to the jury for decision and the court granted an instruction to McAdory and Hammons submitting for decision on the counter claim the question of negligence on the part of Brown and his agent Barrow in entrusting the automobile to Paull. The court also granted a peremptory instruction to the plaintiff for a recovery on the original declaration. The jury, on the peremptory instruction, returned a verdict in favor of the plaintiff for $1,605.00. It also returned a verdict on the counter claim against Brown for the sum of $1,605.00, and a judgment was entered accordingly, from which Brown appeals.

The principal contention raised on this appeal is that the lower court erred in submitting to the jury on

the counter claim the issue of negligence on the part of Brown's agent in entrusting the automobile to Paull.

The title of Brown to the automobile was proved without dispute and we think that the case is largely controlled by the case of Unger v. Abbott, 92 Miss. 563, 46 So. 68. We quote the opinion in that case in full:

"Appellee sent his cotton to town by a negro laborer, with instructions to haul it to the compress, have it weighed, and bring the slips (receipts) and samples home. The negro did carry it to the compress, but put it there as his own, got the slips and samples, and the warehouse receipt, and took it to the appellants, Unger & Co., to whom he sold it, and then immediately left for parts unknown. Abbott brought replevin for the cotton and recovered, and Unger & Co. appeal.

"It was Abbott's cotton, and, we think, necessarily remained his until he or some authorized agent disposed of it. This, we think, always was the law in the state of Mississippi, and is still so. Messrs. Unger & Co. are to be condoled with for their loss by this swindle; but their misfortune cannot affect the right of Abbott to have his cotton. In our view, counsel for appellant was right in his first impression of the law, which he so frankly states in his written argument. 'Caveat emptor' applies."

The same rule applies in the state of California as was held in the case of California Jewelry Co. v. Provident Loan Assn., et al, 6 Cal. App. 2d 506, 45 P. 2d 271. This was a decision of the District Court of Appeal in California in 1935 and an application for a hearing before the Supreme Court of California was denied. We quote briefly from the opinion in that case: "The case arose out of the following facts: Plaintiff was in the wholesale jewelry business at San Francisco and Los Angeles. Defendant Provident Loan Association was in the business of loaning money upon pledges of personal property. One Kaplan was a trafficker in jewelry and precious stones. He received the property from plaintiff and on the same day

pledged the same to defendant. * * * If Kaplan acquired no title from plaintiff he had none to convey to a third party. If he had no authority to transfer title his pledge to the defendant company affords the latter no protection under section 2991, Civil Code."

In the case of Roy v. Hammett Motors, Inc., 187 Miss. 362, 192 So. 570, this Court said: "In order that a dealer in chattels of a certain kind may be able to make a sale, he must convince the prospective purchaser that it is to the interest of the prospect to make a purchase of that chattel. And in order that a prospective purchaser may be better enabled to become convinced that it is to his interest to buy, it is within the lawful right of the owner to deliver the chattel into the hands and exclusive control of the prospective purchaser, or the agents or representatives of the prospect for the purposes of test and demonstration by actual use, as fully as any owner has the right to lend his chattel for the accommodation of a lendee. And if it were practically certain that in every case the result of such actual use in the test or demonstration would result in a sale, it could be said with reason that what is done during the course of the test or demonstration would be in the interest or in the behalf of the seller and that he would be liable for any negligent act resulting in injury during that time..

"But often the test or demonstration by the prospective purchaser will result in convincing him that it is not to his interest to make the purchase, thereby disserving the interest of the prospective seller. The conclusion is inescapable, therefore, that the dominant interest which is being served when the prospective purchaser has the chattel in his possession and under his own control for the purposes of test and demonstration, is the interest of the prospective purchaser himself, an interest which for the time being stands in opposition to that of the prospective seller, and in consequence that there is no such relationship between the owner and the prospect as will make the

owner liable for the acts of the prospect in the use of the chattel during the course of the test or demonstration and after the delivery of the chattel into the possession, and under the control, of the prospective purchaser for the stated purpose. It is a fact well known that there are many persons who would not purchase an automobile, and especially a second-hand automobile, unless and until it has been tested either by themselves personally or by some person in whose judgment they have particular confidence, all this to be entirely away from and out of the presence of the dealer or his agent and their persuasive dealer's talk.''

In the case of Hart v. Moore, 171 Miss. 838, 153 So. 490, this Court said: ''In no relation of life do men conduct their affairs as though crime will be committed whenever it may be. It cannot be negligence to do that which can injure no one unless some one else shall commit a felony, and under circumstances in which no duty is imposed not to do the act. A bailee of goods, who negligently exposes them so that they may be stolen, would be liable to the bailor if they are stolen, but this is because he is under duty to the owner not to expose them. But if one negligently keeps his own property, and it is stolen, he does not forfeit his right to reclaim it from a purchaser from the thief, because, as to such person, he is under no duty.''

The relation between Brown and Paull was clearly that of bailor and bailee. And it seems that the general rule throughout the nation is the same as has been followed by the Mississippi and California courts. In 6 Am. Jur. page 262, Bailments, Section 126, it is said: ''If one delivers property to another as a mere bailee, a purchaser from the bailee, however innocent he may be, acquires no title as against the bailor, for the sale, exchange, pledge, mortgage, or other transfer of property by a bailee in possession thereof, though to an innocent purchaser, does not divest the title of the bailor, and he may recover the

property *or its value* from the vendee or transferee in an appropriate form of action.

· ''The rule that where one of two innocent persons must suffer, the loss should fall on him whose act or omission made the loss possible is inapplicable to ordinary bailments, as in the everyday transactions of life men are under the necessity of intrusting the possession of goods to servants and bailees for various purposes, and the owner does not in such case lose his property by a breach of trust in the mandatary or other bailee, where there is no sale in market overt, but the doctrine of caveat emptor, as to any title the purchaser may acquire, applies.''

■■■ The appellees have cited and relied upon several cases from various jurisdictions and we have carefully examined all of them. They do not deal with the question now before us, but are cases which involve the liability of a bailee to his bailor for negligence in letting the bailed property be stolen. No case is cited which deals with the liability of a bailor to a third party who may have acquired the property from the unfaithful and untrustworthy bailee. This Court has spoken on the point under consideration in the case of Simmons v. Atkinson & Lampton Co., 69 Miss. 862, 12 So. 263, as follows: ''In no relation of life do men conduct their affairs as though crime will be committed whenever it may be. It cannot be negligence to do that which can injure no one unless some one else shall commit a felony, and under circumstances in which no duty is imposed not to do the act. A bailee of goods who negligently exposes them so that they may be stolen, would be liable to the bailor if they are stolen, but this is because he is under duty to the owner not to expose them. But if one negligently keeps his own property, and it is stolen, he does not forfeit his right to reclaim them from a purchaser from the thief, because, as to such person, he is under no duty.'' ■■■ We are therefore of the opinion that in this case the trial court was in error in submitting to the jury the liability of

Brown to McAdory and Hammons, based upon the alleged negligence of Brown's agent.

The judgment of the lower court is therefore reversed and a judgment will be here entered in favor of the appellant and against the appellees for the sum of $1,605.00, which was the undisputed value of the automobile in question.

Reversed and judgment here.

*Roberds, P. J.,* and *Kyle, Holmes* and *Gillespie, JJ.,* concur.