# Kansas City, Memphis & Birmingham R. R. *v.* Ivy Leaf Coal Co.

## *Assumpsit on Common Counts.*

1. *Payment of check to agent, when good.*—When a bank pays a check drawn on it by a customer to an agent who had authority to endorse the check, but whose limited authority to endorse for collection only, is unknown to the drawee, and checks with similar endorsements had been previously paid through the clearing house without objection on the part of the principal, this operates as a payment of the debt for the settlement of which the check was drawn.

45-97.

[Kansas City, Memphis & Birmingham R. R. v. Ivy Leaf Coal Co.]

APPEAL from Jefferson Circuit Court.
Tried before Hon. J. B. HEAD.

HEWITT, WALKER & PORTER, for appellants, cited *Bank v. Miller*, 77 Ala. 168; *Bank v. Whitman*, 94 U. S. 343; *Hall v. Jamie DeLancy Engine Co.*, 91 Ala. 363; *Thomas v. Supervisors*, 115 N. Y. 52; *Syracuse R. R. Co. v. Collins*, 58 N. Y. 641; 82 *Ib.* 2; Morse on Banks, §§ 474, 475; *Bank v. Merchant Nat. Bank*, 91 N. Y. 106; 86 *Ib.* 404; 119 *Ib.* 195; *Honig v. Poe*, Bank 15 Pac. Rep. 58; Randolph Com. Paper, section 386; *Wheeler v. McGuire*, 86 Ala. 398; *People v. Bank*, 76 N. Y. 560; and numerous other authorities, in support of the contention that the bank was bound to know that the agent's authority was limited.

JOHN J. MOORE, for appellee. No brief came to hands of the Reporter.

STONE, C. J.—An able and elaborate argument has been submitted for appellant in this case, but we think the true merit of the controversy may be reduced to a single, simple principle.

Each of the parties is a private corporation. The appellant, the railroad company, had a claim against the appellee for freight transported. The former did its banking business in Birmingham through the First National Bank of that place; the latter through the Alabama National Bank of the same place. A custom or usage and agreement had grown up by which the Coal Company made weekly payments of its indebtedness for freight—transportation, and it made them in checks on the Alabama National Bank. These checks were made payable to S. Jacobs, agent. S. Jacobs was the local agent of the railroad company at Birmingham, and Stephenson was with him in the office, and was cashier in that office. He, Stephenson, was authorized to collect freight bills, to receive the money, and to give receipts, and both he and Jacobs were authorized to pay out money collected by them in proper disbursements relating to the road. When money was deposited in the First National Bank to the credit of the railroad company, neither Jacobs nor Stephenson had authority to check upon it, or draw it out. Only Keeler, the general cashier of the railroad company, had that right. His office was in Memphis, Tennessee.

There was another regulation which prevailed in the railroad office at Birmingham. While Stephenson had authority to collect freight bills and give receipts, to collect checks

which had been given for freight, and, to that end, to endorse them in the name of Jacobs to whom they were made payable, he had no authority to endorse, or transfer them for any other purpose. He could only indorse for purpose of collection, or collection and deposit. The Alabama National Bank had neither notice nor knowledge of this limited nature of his authority. Smith, the paying teller and assistant cashier of the First National Bank, gave the following testimony, and there was nothing to contradict it: "I am paying teller and assistant cashier of the First National Bank, and was such at the time the check now shown me, which is "Exhibit A." to the bill of exceptions, was given. At that time the plaintiff kept its account with the First National Bank. It was in the name of plaintiff, but subject to the check of Charles Keeler cashier at Memphis, only. Stephenson and Jacobs had no right to check on it. The authority of Stephenson and Jacobs as to indorsing checks, was given to the bank by a letter of instruction from the auditor of the plaintiff. Stephenson had authority to indorse checks in Jacobs' name, for deposit, and that was the extent of his authority to indorse. He had no authority to indorse checks, and get the money on them. · · · We never paid any checks to Stephenson, on his indorsement of Jacobs' name on them. We received them for deposit on such indorsement, credited them to the account of the plaintiff, and they then became subject to the check of Keeler only. The checks shown me, and which are marked "exhibit b." to —, inclusive were deposited and indorsed by Stephenson at the First National Bank, and credited to the account of the clearing house, from the Alabama National Bank."

The present suit was instituted for the recovery of a freight bill and the defense was payment. The alleged payment was through a check dated February 28th, 1891, drawn by the Coal Company on the Alabama National Bank, and is in the following words:

"Alabama National Bank,

Pay to the order of S. Jacobs, agt. three hundred and eighty-two and 70-100.

Ivy Leaf Coal & Rwy. Co.

Indorsed.                                by Walter Moore Pt."

"S. Jacobs agt. by W. Stephenson Cash."

The proof was that Stephenson presented this check at the Alabama National Bank, on the day of its date, that he indorsed it as shown above, and that then and there the teller of the bank paid him in money the amount shown in the face of the check. Stephenson then absconded and has never

[Kansas City, Memphis & Birmingham R. R. v. Ivy Leaf Coal Co.]

accounted to the railroad company for the money. It is not pretended that the Alabama National Bank did not cash and take up this check.

Part of the defense relied on by the coal company was presented as follows: Commencing in August, 1890, and extending to February 17, 1891, defendant, the coal company, had settled and paid many freight bills to the plaintiff, railroad company, and in every instance the payment was made through the coal company's check on the Alabama National Bank. Each of said checks, nine in number, was a precise copy of the one in which defense of payment was attempted in this case, (copied above) except one dated September 9, 1890. That one is payable "to the order of K. C. M. & B. Agt." Each of said nine checks was indorsed in the identical language. "S. Jacobs agt. by W. Stephenson Cash.)" Each of these nine checks were received by the First National Bank, on the indorsement stated, and received, not for money paid out, but for "collection and deposit," to the credit of the railroad company. And each was met by the Alabama National Bank, and paid through the clearing house to the First National Bank, and the proceeds placed by it to the credit of the railroad company. We are not informed that the Alabama National Bank was ever notified that Stephenson's authority to indorse checks payable to Jacobs, agent, was a limited authority, "for collection and deposit." It is not claimed it was so notified. Upon what principle can it be contended that after paying nine checks, and rightfully paying them, on the indorsement, "S. Jacobs agt. by W. Stephenson Cash.," the Alabama National Bank wrongfully paid the tenth one, having upon it identically the same indorsement?

The Alabama National Bank certainly did no wrong, for it simply cashed the check of its customer, paying it to one rightfully authorized to indorse it.

The present case presents no question of a forged indorsement. All the testimony shows that Stephenson had authority to indorse the check, and to indorse it in the name of Jacobs, the agent. When he took a further step, and demanded and received the money the check called for, from the bank drawn on, he simply transcended his authority but the Alabama National Bank, had no knowledge or notice of the limit on Stephenson's authority to indorse.

There is nothing in what we have said that in the least antagonizes the doctrine that the mere giving of a check does not *per se* extinguish the debt it is intended to pay.

[McAfee v. Glen Mary Coal and Coke Co.]

*First National Bank v. Whitman*, 94 U. S. 343; *Nat. Com. Bank v. Miller*, 77 Ala. 168.

In this case, there was not only a check given, but that check was collected by the person authorized to indorse it. The bad faith and treachery were the act of the railroad's agent, and cannot be visited on either the drawer of the check, or the bank drawn on.

We need not consider the correctness of the court's ruling on the introduction of evidence. That question could not affect the result of the case.

Affirmed.