(117 App. Div. 352)

### FULLER v. MUNICIPAL TELEGRAPH & STOCK CO.

(Supreme Court, Appellate Division, Third Department. January 18, 1907.)

1. GAMING—SPECULATIVE TRANSACTIONS—RECOVERY OF PAYMENTS AS MARGINS
   —PRINCIPAL AND AGENT.

   Where customers paid an agent of defendant certain sums as margins on sales and purchases of stock, but defendant made no actual purchases or sales, and the agent knew these facts, and at the termination of the agency settled with the customers, neither he nor his assignee obtained title to any claim they might have against defendant.

2. SAME.

   Where a customer paid $770 margins on account of purchase of stocks to an agent of defendant, but no purchase was made, and the agent, on closing his relations with defendant, transferred the account to another company, which carried it for several weeks without expense to the customer, and then paid him $1,100, so that he received the full benefit of the transaction as if the purchase had actually been made, he is not entitled to recover from the defendant the amount of margins paid, though defendant retains that amount without consideration.

3. SAME.

   Where customers paid sums to an agent of defendant as margins on sales and purchases of stock. which defendant never actually made, and when the agent closed his relations with the defendant they transferred their accounts to another company through the agent, and it appears that no moneys were received by them from the company to which the transfer was made, they are entitled to recover of defendant the amounts paid.

4. SAME—SET-OFF AND COUNTERCLAIM.

   In an action to recover of a broker amounts paid as margins on purchases and sales of stock which the broker never actually made, the broker is not entitled to set off a claim for nonpayment of additional margins.

Appeal from Judgment on Report of Referee.

Action by William H. Fuller against the Municipal Telegraph & Stock Company. From a judgment in favor of plaintiff on the report of a referee and from an order granting an additional allowance of costs, defendant appeals. Reversed on condition.

Argued before SMITH, CHESTER, KELLOGG, and COCHRANE, JJ.

John A. Delehanty (D. Cady Herrick, of counsel), for appellant.
James Jenkins (John A. Stevens, of counsel), for respondent.

JOHN M. KELLOGG, J. The manner in which the business was transacted at the so-called broker's office at Rondout, and at the defendant's main office at Albany, is not materially different from that described in Haight v. Haight & Freese Co., 112 App. Div. 475, 98 N. Y. Supp. 471, and McCarthy v. Meaney, 183 N. Y. 190, 76 N. E. 36. Here there were no sales or purchases of stock pursuant to the orders of the various customers. The business of those offices, so far as the plaintiff and his assignors are concerned, was all on paper. They were simply bookkeepers, and not stockbrokers. The plaintiff and his assignors actually intended to and believed they were buying and selling stocks, and were paying their money on account of such supposed transactions. Otherwise the business was purely fictitious. The above cases show the liability of the defendant, if it is establish-

ed that Quincey, the person in charge of the Rondout office, represented the defendant so far as to make it liable for his acts in receiving the moneys of the plaintiff and his assignors and paying them over to it.

It is unnecessary to discuss all the evidence bearing upon the question of the liability of the defendant for Quincey's acts. Among other things, the evidence tended to show that the moneys received from the plaintiff and other customers were deposited by Quincey in the bank to the credit of defendant, that a part of said moneys consisted of a commission of one-fourth of 1 per cent. on the par value of the stock for buying and selling the stock, and that the defendant agreed to pay Quincey one-half of that commission "as his fee" for doing the business. There was sufficient evidence to justify the findings that the defendant is liable for the moneys received at the Rondout office.

The complaint proceeds upon the theory that the plaintiff and his assignors paid money into the Rondout office as margins and commissions for stocks which they directed to be bought and which stocks were wrongfully reported as bought, that the stocks were not bought, and that the transaction, so far as the defendant was concerned, was simply to receive the money on account of a series of fictitious entries upon its books, and, that having failed to perform its contract, the defendant is liable to the plaintiff for the moneys received, with interest thereon. Among the claims upon which recovery was had were the Rafferty claim of $1,038.58 and the Hiltebrant claim of $253.68. The plaintiff cannot recover upon either of these claims. When customers "bought" stocks at the Rondout office, Quincey, the manager, gave them a slip stating that he had bought the stock in his name for their account. When he closed his relations with the defendant, he put one of these customers, without expense to him, in the Metropolitan Stock Exchange of Boston for the same stocks, giving him a ticket with that company and receiving back the Quincey ticket. The other customer, when Quincey closed his relations with the defendant, offered to settle with him for a small amount, and he paid it and received the slip previously given. These facts constitute the alleged assignment of these claims. It is evident that the business as conducted by Quincey and the defendant with reference to the plaintiff and his assignors was illegal, and both Quincey and defendant were liable for the wrongful acts. There can be no real question that Quincey knew the manner in which the defendant carried on its business, and that the transactions, so far as he and the defendant were concerned, were purely bogus and existed only on paper. Therefore, when he substituted one company for the other and paid one customer a small amount, it must be deemed that he was settling with his victim for the wrong done. By such settlement he obtained no title to any claim against the defendant. Quincey could not recover from the defendant, and his alleged assignee is in no better position.

One Wolff had paid into the Rondout office $770 margin on account of the purchase of stocks. Quincey, when he closed his relations with the defendant, transferred Wolff's account to the Metropolitan Company, and he was carried with the Metropolitan Company for several weeks for the same stocks without expense to him, and the

transaction was then closed and Wolff was paid $1,100. In fact, he received from Quincey $1,100 on account of the $770 which he had paid to Quincey and on account of the same transactions. After Wolff was transferred to the Metropolitan Company he was informed of the fact by Quincey and assented to it. So far as Wolff is concerned, this may fairly be treated as one transaction. It does not appear whether the transaction between Quincey and the Metropolitan Company was an actual purchase of the stock, or only a fictitious paper transaction. However that may be, Wolff received the same advantages from it that he would have received if Quincey had purchased the stock when the order was first given and when he was representing the defendant. It does not, therefore, seem that Wolff has suffered any damage by reason of the fact that Quincey and the defendant did not in the first instance purchase the stock. It is true the defendant still holds his money without consideration. But it received it under such circumstances that both it and Quincey were liable for it, and Quincey, one of the wrongdoers, reinstated the purchase and procured for Wolff all the benefits intended. He received every benefit an actual purchase of the stock could have brought him. That was, in fact, an adjustment by one of the wrongdoers for the wrong done, and after having had full satisfaction Wolff, or his assignee, cannot now proceed against the other wrongdoer. If Quincey had remained the representative of the defendant when the $1,100 was paid to Wolff, it is evident that with the $1,100 in his pocket Wolff could not recover of the defendant the $770 which it had received. It is also clear that, if an action had been brought against Quincey after this account was transferred to the Metropolitan Company, the transfer and the receipt by the plaintiff of the profits of the transaction, larger than the original investment, would be a defense so far as Quincey is concerned. If a defense to Quincey, it would seem to be a defense to the defendant, who was apparently a conspirator with him in obtaining the plaintiff's money. When Quincey closed his relations with the defendant, several other assignors of the plaintiff transferred their accounts to the Metropolitan Company through Quincey; but they either paid the regular commission, or it does not appear how they were reinstated, and it appears that no moneys were received by them from the Metropolitan Company, and therefore, as to those various claims, it cannot be said that the parties have received any satisfaction on account of the wrong done by the defendant in obtaining and withholding their moneys.

Prior to the times mentioned in the complaint, and at the time of the Northern Pacific "corner," the sudden drop in the market resulted in entries upon defendant's books tending to show that Quincey was indebted to it in a large sum, which indebtedness was on account of purchases made by the assignors through Quincey, and these paper transactions are now urged by the defendant as a counterclaim. It is evident that, if defendant is liable for a return of the margins on account of the manner in which it did its business, it could have no legal claim for nonpayment of margins on similar transactions. It is unnecessary, therefore, to consider the evidence which tends to show that the defendant to induce the assignors to continue doing busi-

ness with the Rondout office agreed to wipe the slate and start anew. The defendant therefore had no counterclaim.

The case is a long and complicated one, difficult and extraordinary, and the discretion of the Special Term granting an additional allowance of costs was properly exercised.

The judgment therefore is reversed upon the law and the facts, and the referee discharged and a new trial granted, with costs to the appellant to abide the event, unless plaintiff within 20 days from entry of order stipulates to modify the judgment by deducting therefrom the amount recovered on account of the Rafferty claim, the Hiltebrant claim, and the Wolff claim. In case of such stipulation the judgment ·is so modified, and, as modified, is affirmed, without costs.

The order appealed from is affirmed, without costs. All concur.