## STRICKLAND TRANSPORTATION COMPANY V. FIRST STATE BANK OF MEMPHIS.

No. A-1638. Decided November 10, 1948.
(214 S. W., 2d Series, 934.)

194

*Rawlings, Sayers & Scurlock* and *Nelson Scurlock*, of Fort Worth, for petitioner.

It was error for the Court of Civil Appeals to hold that the defendant bank was not liable for conversion "as a result of its acts knowingly and wilfully done" in paying the money on the checks in question to John W. Akard who was not authorized

to receive it, when the checks had not been endorsed by the payee. United States Fidelity and G. Co. v. Adoue & Lobit, 104 Texas 379, 138 S. W. 383, 37 L. R. A. (N. S.) 409; Fidelity & Dep. Co. v. Fort Worth Natl. Bank, 65 S. W. (2d) 276; Kentucky Title Sav. Bank & Tr. Co. v. Dunavan, 205 Ky. 801, 266 S. W. 667.

*Hamilton & Deaver, John Deaver,* and *Sam J. Hamilton,* of Memphis, for respondent.

In the absence of pleadings or proof that drawee bank acted in bad faith in cashing the checks in question, it was not error for the Court of Civil Appeals to hold that the defendant bank was not liable for alleged negligence in cashing the checks, even though it was made to appear that the bank had actual notice of the fact that the payee of said checks had not endorsed same. Quanah A. & P. Ry. Co. v. Wichita State Bank & Tr. Co., 127 Texas 407, 93 S. W. (2d) 701; American Surety Co. v. Fenner, 133 Texas 37, 125 S. W. (2d) 258; West v. First Baptist Church of Taft, 123 Texas 388, 71 S. W. (2d) 1090.

MR. JUSTICE BREWSTER delivered the opinion of the Court.

Petitioner, Strickland Transportation Company, a corporation, operating a motor truck line, employed one John W. Akard as its commission agent in Memphis, Texas. His duties included picking up and delivering freight transported by petitioner; he was authorized to accept checks of customers payable to petitioner for freight charges; but he was not authorized to indorse or cash these checks, only certain officers of the petitioner being so authorized.

Akard served as petitioner's employee for about four weeks in December, 1945, and January, 1946. During that time he received for freight charges due petitioner from a customer, White Auto Store, six checks, totaling $1,304.73, all drawn by White Auto Store on respondent, First State Bank of Memphis. He indorsed these checks and presented them to the respondent for payment. They were made payable and indorsed as follows:

| Date | Amount | Payee | Indorsement |
|------|--------|-------|-------------|
| 12- 4-1945 | $ 27.08 | Strickland Transportaton | Stricklin Motor frate argeis John W. Akard |
| 12-17-1945 | 386.11 | Strickland Transportation | John W. Akard Stricklin frate Agan |
| 1-14-1946 | 32.24 | Strickland Transportation Co. | John W. Akard |

| | | | | |
|---|---|---|---|---|
| | | | | Agent |
| 1-17-1946 | 64.81 | Strickland Transportation Co. | · | John Akard |
| | | | | Agent |
| 1-19-1946 | 754.26 | Strickland Transportation | · | John Akard |
| | | | | Agent |
| 1-23-1946 | 40.23 | Strickland Transportation | | John Akard |
| | | | | Agent |

Upon being presented with the checks, the bank paid their amounts to Akard, and charged them against the account of White Auto Store, which at all times had on deposit sufficient funds to pay the checks. Later the canceled checks were returned by the bank to White Auto Store. Akard appropriated to his own use the money so paid to him, and left for parts unknown.

When petitioner learned of Akard's misconduct it demanded that the bank pay it the amounts of the checks and offered to deliver the checks properly indorsed. It also got from White Auto Store an assignment of all of its rights and causes of action against the bank, arising out of the transactions set out above. After the bank refused to make the payments demanded, petitioner filed this suit.

It alleged that the bank was liable to it, as payee of the checks, for wrongful conversion of the checks when "it was apparent to the defendant (bank), its agents and officers, that the said Akard was not acting for and on behalf of the plaintiff and was obtaining the funds for his own use and benefit." It also alleged that the bank was guilty of negligence in cashing the checks without petitioner's indorsement. It further alleged that the payment of the checks upon an unauthorized indorsement was a breach of the bank's duty to its depositor, White Auto Store, that the bank was without authority to charge the amounts paid to Akard against the account of such depositor, and that as assignee of White Auto Store, the petitioner was entitled to recover the amounts.

Respondent answered by special exceptions and a general denial and pleaded specially that the execution and delivery of the checks to Akard constituted payment of the indebtedness of White Auto Store to petitioner, and that the assignment made by White Auto Store to petitioner conveyed no rights, because White Auto Store had suffered no damage by the payment of the accounts of the checks by the bank to Akard and the charging of the amounts against the account of White Auto Store.

The case was tried by the court without a jury and judgment was entered for the bank. No findings of fact or conclus-

ions of law were filed or requested. The court of civil appeals affirmed the judgment of the trial court. 207 S. W. (2d) 941.

■ Petitioner's first contention is that the bank is liable to it as payee of the checks on the theory of wrongful conversion. It concedes that under the decision in Fidelity & Deposit Co. v. Fort Worth National Bank (Com. App.), 65 S. W. (2d) 276, the payee of a check ordinarily has no direct cause of action against the drawee for payment of the check upon a forged or unauthorized indorsement. While the theory of conversion is not discussed in the opinion in Fidelity & Deposit Co. v. Ft. Worth Bank, supra, it is made evident from the opinion of the court of civil appeals in that case, 48 S. W. (2d) 694, that recovery was sought on that theory, and the denial by this court of liability on the bank's part can only be construed as a rejection of the conversion theory as a ground of liability. Further-, more the Commission of Appeals expressly refused to approve the earlier decisions of courts of civil appeals, allowing recovery on the theory of conversion, in City National Bank & Trust Co. v. Pyramid Abestos & Roofing Co., 39 S. W. (2d) 1101 and Pierce Petroleum Corporation v. Guaranty Bond State Bank, 22 S. W. (2d) 520. See Fidelity & Deposit Co. v. Fort Worth National Bank, supra, at page 278. We must hold to that decision.

Petitioner, however, would distinguish the present case on the theory that respondent knowingly and willfully paid the checks to an unauthorized person. In this connection, petitioner argues that as a matter of law, because of the forms of the indorsements on the checks, the bank knew that Akard was acting without authority. We cannot agree with that contention. We assume, without deciding, that if it had been established that the bank knowingly and willfully aided Akard in his wrongful disposition of the checks, the bank would be liable to petitioner. See American Surety Co. v. Fenner, 133 Texas, 37, 125 S. W. (2d) 258. But the record does not establish as a matter of law that the bank had any such knowledge or intent. The evidence shows that Akard, in presenting the checks for payment, was purporting to act in a representative capacity. For some purposes, he was in fact the agent of petitioner. While the form of the indorsements was such as might reasonably cause inquiry as to Akard's authority, we do not think that the bank was necessarily informed that he was acting without authority in cashing the checks. The bank, as drawee, could pay the amount of the checks to the agent of the payee without requiring an indorsement, if it chose to do so, 9 C. J. S. p. 684, sec. 341. If Akard had been authorized to cash the. checks, the bank

would not be liable for paying the amounts of the checks to him, regardless of the defects in the form of the indorsements. By entering judgment against petitioner the trial court impliedly found that the bank was not acting in bad faith and that it did not have actual notice of Akard's lack of authority to indorse and cash the checks, and we cannot say as a matter of law that the evidence does not support those implied findings. Mere negligence would not impose liability on the bank to the payee. See Quanah, A. & P. Ry. Co. v. Wichita State Bank & Trust Co., 127 Texas 407, 93 S. W. (2d) 701, 106 A. L. R. 821; West v. First Baptist Church, 123 Texas 388, 71 S. W. (2d) 1090.

Therefore we conclude that, under the record, the petitioner as payee of the checks has no direct cause of action against the bank.

■ Petitioner also sues as the assignee of White Auto Store. This situation was not involved in Fidelity & Deposit Company v. Fort Worth National Bank, supra. The question on this aspect of the case is whether White Auto Store had any cause of action to assign; and to decide it we must determine whether the liability of White Auto Store to petitioner was discharged by the delivery of the checks to Akard and their subsequent payment by the bank to Akard. The question appears to be one of first impression in this state. Turning to the authorities and decisions in other jurisdictions, we find some hold unequivocally that the liability of White Auto Store was discharged, while others hold with equal emphasis that it was not. In that situation we must choose, and we·have concluded that the better reasoned authorities hold that White Auto Store's liability was discharged when the checks were paid to Akard.

It is admitted that the checks were good when given and were paid in full to Akard when presented. The only thing that kept petitioner from getting the proceeds was the infidelity of its own agent. So the question is: Must the harm wrought by that agent's unfaithfulness fall on the one who selected him and sent him out to receive checks under an implied representation that he was worthy of that office or on one who was wholly innocent both of him and of his breach of trust?

■ There is an excellent discussion of the proposition in McFadden v. Follrath, 114 Minn. 85, 130 N. W., 542, 37 L. R. A. N. S. 201. There the creditor instructed his agent to call on the debtor to collect the account. The agent had authority to receive pay-

ment either in cash or by check, but he had no authority to indorse and receive money on checks payable to the creditor. The debtor gave the agent a check covering the account and payable to the creditor. The agent indorsed the check and received its amount, in money, from drawee bank, which in turn charged debtor's account with the amount and returned the cancelled check to the debtor. The agent did not account to his principal, the creditor, whereupon the latter brought suit against the debtor on the account to pay which the check had been given. In affirming a trial court judgment for the defendant, the Supreme Court of Minnesota said: "Whether a check is delivered to an ·agent or sent by mail, it usually comes into the hands of employees of the payee, who are not given the right, but are given the opportunity, by the payee, to indorse the checks and receive the money, provided the bank neglects its duty to see that payment is made to the payee or his order. If the check is improperly paid, because of the dishonesty of the agent that the payee intrusts with the check, and the negligence of the bank, there would seem to be no sufficient reason for placing the responsibility therefor on the drawer of the check. The drawer of the check parted with control over it in the usual course of business, and in this case in the exact manner the payee requested. If either the drawer or payee must suffer because of the dishonesty of the agent, the one who designated him to receive the check and intrusted him with it should suffer, rather than the drawer, who had no voice in the selection of such agent, and who is in no way responsible for his acts."

In Morrison v. Chapman et al, 155 App. Div. 509, 140 N. Y. S., 700, wherein the facts were quite similar and the defaulting agent was named Cooper, the court says, "The real question therefore is who shall suffer by reason of Cooper's rascality", citing Burstein v. Sullivan, 119 N. Y. S., 317, which holds that, as between debtor and creditor, the transaction should be treated as a payment, precisely as though cash had been paid, "even though the agent forges an indorsement and steals the money." If the agent "was authorized by plaintiffs to receive this check from the defendant, any misappropriation of its proceeds by him is at the risk of the party who set him in motion and put it in his power to perpetrate the wrong. Such party must suffer, rather than the party which is in no wise accountable for, and has no control of, the perpetration of the wrong." Sage et al v. Burton, 84 Hun. 267, 32 N. Y. S., 1122. And see discussion in Birkett v. Postal Telegraph-Cable Co., 107 App. Div. 115, 94 N. Y. S., 918, affirmed in 186 N. Y., 591, 79 N. E., 1101.

The same conclusion was reached by the Supreme Court of Arkansas in Mills v. Hurley Hardware & Furniture Co., 196 S. W. 121, wherein a check was *mailed* to the creditor and received by an agent who was authorized to receive and fill orders and to receive checks therefore but not to cash them. But the agent, one Gowens, cashed the check and appropriated the proceeds to his own use. Upon the debtor's refusal later again to pay the account, to pay which the check had been drawn and mailed, the creditor filed suit. The court said, "But appellee could not be held reseponsible for the dereliction of the agent of appellant whom appellant had clothed with express authority to receive checks. Notwithstanding Gowens had no authority to cash checks which he was authorized to receive through the mail, he did have express authority to receive these checks. The check was sent to and received by the proper party. That ended appellee's responsibility, and constituted payment by the appellee the moment the check was cashed. If Gowens, appellant's agent, in violation of express authority, through misrepresentation and fraud, cashed the check, appellee was in no manner responsible for such dereliction."

Upon much the same reasoning the same holding was made by the Supreme Court of Alabama in Kansas City, M. & B. R. Co. v. Ivy Leaf Coal Co., 97 Ala. 705, 12 So., 395, and by Courts of Appeals of Missouri in Union House Furnishing Co. v. Natl. Bk. of Com., 53 S. W. (2d) 1067, and in Indemnity Mutual Marine Assur. Co. v. Powell & O'Rourke Grain Co., 216 Mo. App. 673, 271 S. W., 538.

A widely recognized authority, Mechem on Agency (2nd Ed.), Vol. 1, sec. 953, p. 687, declares: "Of course, where the agent is authorized to receive the check, the fact that he afterwards wrongfully indorses it and obtains the money upon it, does not destroy the effect of the check as payment by the drawer."

"Where a check is delivered to the agent of the creditor and the agent wrongfully indorses and collects the check, the original indebtedness is extinguished. The situation is the same as if the amount had been paid to the agent in cash and stolen by him." Brady on the Law of Bank Checks (2nd Ed.) p. 24, citing the New York and Missouri cases, supra.

It would serve no good purpose to attempt any argument with those respectable authorities which reach the opposite conclusion. We think those authorities which we have cited and

discussed announce a sounder and more equitable rule, so we follow them.

The unfortunate position in which petitioner finds itself is not due to any act or omission of White Auto Store but arises solely from the unfaithfulness of petitioner's own agent. Under those circumstances it would not be just to say that White Auto Store must pay its debt again, either on the theory that it has recourse against the bank or on the theory that petitioner may have no effective remedy against the bank. It should not have to suffer the annoyance and expense of litigation merely because petitioner's agent proved untrustworthy; those burdens justly belong to petitioner. We think White Auto Store's liability was discharged by its delivery of the checks to Akard and their subsequent payment by the bank to Akard, and that, therefore, White Auto Store had no cause of action against the bank to assign to petitioner. And we so hold.

Both judgments below are affirmed.

Opinion delivered November 10, 1948.

No motion for rehearing filed.

MR. JUSTICE HART, dissenting.

While agreeing that under our decisions the petitioner has no direct cause of action against the bank, I dissent from the majority's holding that the petitioner cannot recover from the bank as assignee of the depositor, White Auto Store.

The cause of action which White Auto Store undertook to assign to petitioner consisted of the rights of White Auto Store, as a depositor in the respondent bank and as the drawer of the checks, to recover against the bank for wrongfully paying checks to Akard, who had no authority to indorse or to cash them. Undoubtedly the drawee bank owed a contractual duty to its depositor to pay the amount of the checks drawn by the depositor only to the payee or the payee's authorized agent or transferee. The drawee bank cannot lawfully charge the depositor's account where checks are paid on unauthorized indorsements in the absence of some ground of estoppel or negligence on the part of the drawer, and if it does so, the depositor has a cause of action against the bank for the amounts so wrongfully charged against his account. The settled rule is stated in

7 American Jurisprudence, 427, "Banks", Section 590, as follows:

"As between the drawer of a check and the bank upon which it is drawn, the latter is bound at its peril to determine the genuineness of the indorsements upon which it is paid; it cannot, if the drawer is free from negligence or conduct warranting his estopped, charge against the drawer's account a check payable to a named payee or his order and paid upon a forged indorsement. * * *"

In Joseph Milling Co. v. First Bank of Joseph, 109 Qre. 1, 216 Pac. 560, 29 A. L. R. 358, 367, the Court says:

"The relation between banker and depositor is one of debtor and creditor; and the implied agreement between them is that the banker will pay only in conformity with the orders of the depositor. The obligation of the bank is not merely to use reasonable care to pay in accordance with the order of the depositor, but the undertaking of the bank is, stated broadly, absolute. A bank must pay a check only to the payee named, or to his order. The obligation of the bank is to pay a check only upon a genuine indorsement. The drawer is not presumed to know the signature of the payee; but the bank must at its peril determine the identity of the payee and the genuineness of his signature."

In accord are Guaranty State Bank & Trust Co. v. Lively, 108 Texas 393, 194 S. W. 937; Liberty State Bank v. Guardian Savings & Loan Association, 127 Texas 311, 94 S. W. (2d) 133; 5 Michie, Banks and Banking, Section 277a; 6 Texas Jurisprudence, 308; 9 C. J. S. 734; Britton, Bills and Notes, Section 142.

The majority opinion decides, however, that although White Auto Store would ordinarily have a cause of action against the bank for wrongfully paying the checks on unauthorized indorsements, it had no such cause of action in the present case because it had suffered no damage. In this connection, it is said that White Auto Store received a benefit equal to the amounts charged against its account at the bank, because its liability in these amounts to the petitioner for freight charges was discharged by the delivery of the checks to Akard and the subsequent payment of the amounts of the checks to him. In other words, it is contended that the claims of petitioner against White Auto Store have been paid and therefore White Auto Store suffered no loss by reason of the payment of the checks upon the unauthorized indorsements.

It is true that if the depositor, White Auto Store, had received in any manner or form the benefit of the payments made to Akard, it could not recover damages against the bank on account of such payments. Dycus v. Commonwealth National Bank, 148 S. W. 1127; Shaw v. First State Bank, (Com. App.) 231 S. W. 325; 6 Zollman, Banks and Banking, Section 4295. I do not believe, however, that White Auto Store received any such benefit, because in my opinion its liability to petitioner for freight charges was not paid by the delivery and cashing of the checks.

The mere delivery of the checks to Akard, who was authorized only to receive custody of them and was not authorized to indorse or cash them, did not constitute payment. The delivery of a check and its receipt by either the creditor or his agent is not a payment of a debt in the absence of an express agreement to this effect. Middlekauff v. State Banking Board, 111 Texas 561, 242 S. W. 442. See 32 Texas Jurisprudence, 658, "Payment", Sec. 19; 40 American Jurisprudence, 763, "Payment", Sec. 72. The presumption is that the checks were accepted as payment only on the condition that the amounts of such checks were to be paid to petitioner or its duly authorized agent or transferee. No evidence in this case rebuts this presumption. The stipulation of the parties that in his "capacity as commission agent J. W. Akard was authorized to accept checks of the customers payable to Strickland Transportation Company for freight charges" and the testimony of petitioner's auditor that the checks "were given in payment of freight charges and C. O. D. charges" indicates merely the purpose for which the checks were delivered, and does not constitute proof that there was an agreement that the delivery of the checks would constitute an unconditional discharge or payment of White Auto Store's liability to petitioner. It therefore follows that the mere delivery of the checks, made payable to Strickland Transportation Company, to Akard, who was authorized to receive custody of them, did not constitute payment.

In the present case, however, the facts further show that Akard proceeded to indorse the checks and actually received the money from the respondent bank on which the checks were drawn. The evidence in the present case is undisputed that Akard had authority only to receive checks payable to petitioner and to forward them to petitioner for indorsement by petitioner's duly authorized officers. The authority to indorse and cash the checks would not be implied from Akard's authority to re-

ceive them as petitioner's agent. In 2 American Jurisprudence, 141, "Agency", Section 177, the law is stated as follows:

"An authority in an agent to make or indorse negotiable instrument will not be lightly inferred or implied; such authority will only be implied if the execution or indorsement is usually incident, or manifestly and reasonably necessary, to the performance of the acts which the agent is authorized to perform. If the agent can perform the duties of his agency without the exercise of such authority, it will not be implied Mere possession of an instrument drawn to the principal's order, though rightfully, imports no authority to indorse and transfer it. Nor does authority to receive an instrument payable to the order of the principal imply authority in the agent to indorse it in the name of the principal. * * *"

See also Restatement, Agency, page 169, Section 72; Daniel Negotiable Instruments, pages 393, 395, Sections 323, 324.

The action of Akard in indorsing and cashing the checks was therefore clearly beyond his authority, either express or implied. In taking these actions, Akard was acting for his own benefit and not for the benefit of the petitioner, Strickland Transportation Company. The receipt of the money from the bank to Akard, therefore, cannot properly be held to be a payment to or for the benefit of the petitioner, Strickland Transportation Company, and cannot properly be held to be a discharge of its claim against White Auto Store. The holding of the majority that the debt was thereby paid in my opinion violates the basic principle of the law of agency that a principal can be bound only by the acts of an agent which are within the agent's authority, either real or apparent.

It is true that the petitioner in this case placed Akard in the position where White Auto Store was authorized to deliver checks to him, payable to petitioner's order, and that Akard's possession of the checks was authorized. It does not follow from this, however, that petitioner must suffer for unauthorized acts of Akard in handling the checks. Section 177, Restatement, Agency, reads as follows:

"A disclosed or partially disclosed principal who entrusts an agent with the possession of a negotiable instrument not payable to bearer or endorsed to the agent is not thereby subject to the loss of his interests therein by the collection of the claim or the transfer of the document by the agent."

In commenting on this statement, the same authority says:

"The possession of a document, unless it is endorsed in blank or unless it is a negotiable instrument payable to bearer, does not create in a holder who is not an endorsee apparent authority to transfer it or to collect a claim which it represents. Furthermore, the fact that the possessor is authorized to do something with reference to the document, such as the collection of interest upon a promissory note, does not give him power to deal with the instrument in an unauthorized manner. This is true even though the agent who has possession is the one who conducted the original transaction for the principal."

Since the proceeds of the checks were never paid to petitioner or any agent authorized to receive such proceeds, White Auto Store's obligation was not paid, and it still remained under the obligation to pay petitioner, with the right as depositor to pursue its remedy against the drawee bank for the wrongful payment of the checks. In a similar situation the Court of Appeals of New York said, in Thomson v. Bank of British America, 82 N. Y. 1, 8:

"The case then presents the simple question whether a party paying his own debt by a check to the order of his creditor, or of a party nominated by his creditor, can be called upon to pay it again, in case the creditor loses or is defrauded of the check, and it is paid to the finder or fraudulent holder, on a forged indorsement. We think this question should be answered in the affirmative, unless in some very special case, if such a case can be supposed, where the check was taken in absolute payment and extinguishment of the debt. What the rights of the parties might be in such a case it is not necessary to determine."

In Sheppard & Morse Lumber Co. v. Eldridge, 171 Mass. 516, 51 N. E. 9, 41 L. R. A. 617, 68 American State Reports 446, the facts show that the debtor sent checks to the creditor by mail for the purpose of paying debts incurred in the regular course of business. One of the creditor's clerks, who lawfully had possession of the checks but who was not authorized to indorse them, took the checks and indorsed the creditor's name thereon and obtained payment. The creditor thereafter sued the debtor on the debt, and it was claimed that the debt was discharged, and further that if anyone should suffer by reason of the unauthorized indorsement and cashing of the checks, it should be the creditor rather than the debtor. In response to these contentions, the Supreme Judicial Court of Massachusetts said: (51 N. E. at pages 14, 15.)

"We are of the opinion that the holder of an unindorsed check, payable to his own order, is under no legal obligation to the drawer to exercise care as to how the check shall be kept, or to whom he shall commit its custody, or to see to it that the check shall not be put in circulation by the forgery of his indorsement, so long as he acts honestly, without collusion. Such a holder is not deprived of his remedy against the drawer by merely negligently intrusting such a check to a clerk who, due care would have told him, was dishonest, and thus giving the clerk an opportunity to commit crime. He has the right to assume that his clerk will not commit a crime, and to rest upon the presumption that he has not stolen or forged, and will not do so; and he is under no legal obligation either to the drawer of the check or to the public to see to it that the check is not put in circulation with a forged indorsement. * * *

"While the drawer has done his duty, and it is through no fault of his that the payee does not get his money if the check is stolen from him and collected upon a forged indorsement, that does not furnish a sufficient reason why the loss should remain upon the payee, rather than the drawer. The check was received in payment, and the debt extinguished only in consideration of the drawer's obligation as drawer, and of the payee's rights as holder, which included the right of recourse to the drawer, if upon proper indorsement and due demand, the check should not be paid by the drawee. Although there are intimations in support of the theory that cases like the present are instances in which, as to two innocent parties, losses are to be left where they fall, we think the rights of the present parties must be worked out by considering the usual rights of the drawer and drawee of a check given in a commercial transaction. See Thompson v. Bank, 82 N. Y. 8; Morse, Banks, Sec. 395.

"The fact that the defendant had been in the habit of buying goods of the plaintiff for 10 years, and of making payment by check, imposed no liability upon the plaintiff as to the methods in which its own business should be conducted, or as to what clerks it should employ. So far as these checks are concerned, its obligations to the defendant were merely those defined by the law of negotiable paper, and did not include the duty of taking care that the checks should not be stolen or its indorsement forged."

A similar situation was before the Supreme Court of Mississippi in Hart v. Moore, 171 Miss. 838, 158 So. 490. In that case

the debtor delivered a check to the creditor's agent, who was authorized to receive the check but not to indorse the name of the creditor thereon or to receive payment. The agent nevertheless indorsed the check and received payment, and suit thereafter was brought by the creditor against the debtor, who defended on the ground that the delivery and payment of the check under the circumstances discharged the debt. In discussing this defense, the Supreme Court of Mississippi first pointed out that the bank remained liable to the drawer of the check for paying it upon an unauthorized indorsement: (158 So. at page 495.)

"Under the doctrine of these cases, the liability of the appellant bank to make good any loss sustained by the maker of the check on account of the payment thereof by the bank on a forged indorsement of the payee is apparent, and it only remains to consider the primary liability, if any, of the maker of the check to the payee thereof."

Having decided that the bank remained liable to the maker of the check, the Court further held that the original debtor continued to be liable to the creditor, saying: (158 So. at page 496.)

"As said in Federal Land Bank v. Collins, 156 Miss. 893, 127 So. 570, 573, 69 A. L. R. 1068, the payment of the check on the forged indorsement of the payee 'did not diminish the funds of the drawer in the bank, or put money in the pocket of the person entitled to the payment. The state of the account was the same after the pretended payment as it was before.' The appellee has not been paid the balance due him, and in legal contemplation the appellant Hart still holds the balance as a trust fund and is liable to account to the appellee therefor."

The converse of the same situation was presented in M. Feitel House Wrecking Co. v. Citizens Bank & Trust Co., 159 La. 752, 106 So. 292. In that case the creditor sued the drawee bank, which had cashed the check drawn by the debtor on the unauthorized indorsement of the creditor's employee. The Court held that, since there had been no acceptance by the drawee bank, the creditor could not recover directly against the bank, giving as its reason the fact that the creditor retained his cause of action against the debtor: (106 So. at page 295.)

"It follows from what we have said that plaintiff's action, if the allegations of his petition be true, is not against either

bank for the amount of the check, but, as the check has never in reality been paid, its action for such amount is against the drawer, just as it would have been had the bank, on a proper indorsement, when the check was first presented, refused to pay it."

The same holding was made in Miller v. Northern Bank, 239 Wis. 12, 300 N. W. 758, 137 A. L. R. 870. In holding that the bank was not liable to the payee directly, the Court said: (137 A. L. R. at page 873.)

"The result below came about because it was thought that a cause of action was stated against appellant 'in conversion or for money had and received.' But no property right of the payee was appropriated by the drawee when it mistakenly paid the money to one using the unauthorized or forged indorsement. The drawer's account remained intact in the bank and the respondent's cause of action against her brokers who were the drawers of the check was in no way interfered with."

See also 6 Zollman, Banks & Banking, Sec. 3757, page 161:

"The right of action by the payee is against the drawer, not the drawee, just as if the bank on proper indorsement had dishonored the check."

Since the debtor's obligation is not discharged where his check is not paid to the creditor or an authorized agent, the debtor of course retains his right of action against the drawee bank for wrongfully charging the debtor's account with the amount of the check. In Economy Auto Supply Co. v. Fidelity Union Trust Co., 105 N. J. L. 206, 144 Atl. 30, the debtor sent checks to its creditor, made payable to the creditor, and the checks were received and indorsed and cashed without authority by the president of the creditor company. The debtor thereupon sued the bank for wrongfully charging its account with the amount of the checks which had so been paid on unauthorized indorsements by the creditor's president. In holding that the debtor was entitled to recover against the drawee bank, the Court said: (144 Atlantic at page 31.)

"The legal relation of the bank to its depositor is that it will pay out of the latter's funds in its hands either to the depositor in person or to his order. Harter v. Mechanics' Bank, 63 N. J. Law, 578, 44 A. 715, 76 Am. St. Rep. 224. The checks in the present case were drawn to the order of the Cox Corporation, but as we have seen were never indorsed by it. When, therefore,

they were paid by the trust company they were paid without the authority of the depositor, and the learned trial judge rightfully directed a verdict in favor of the plaintiff."

If the debtor retains a cause of action against the bank for wrongfully charging his account with the amount of checks paid on unauthorized indorsements, then it follows that the debtor may for a valuable consideration assign his cause of action against the bank to his creditor, who may then recover against the bank as such assignee. The creditor, who had an assignment from his debtor of his rights against the bank, was held entitled to recover from the bank in Adler v. Broadway Bank, 30 Misc. 382, 62 N. Y. S. 402. A similar situation was involved in the case of Wormhoudt Lumber Co. v. Union Bank & Trust Co., 231 Iowa 928, 2 N. W. (2d) 267. In that case the debtor was obligated to a lumber company and a contractor jointly for work done and material furnished in the construction of a building. In accordance with the agreement made with his creditor, the owner delivered to the contractor a check made payable jointly to the lumber company and the contractor. The contractor without authority indorsed the name of the lumber company as well as his own name upon the checks and appropriated all of the proceeds to his own use. The lumber company then obtained from the owner an assignment of its rights against the bank upon whom the checks had been drawn, and suit was brought by the lumber company as such assignee. The Court held that the lumber company as assignee was entitled to recover against the bank, in the absence of a showing that the contractor had either real or apparent authority to indorse the name of the lumber company upon the checks.

See also Britton, Bills and Notes, Sec. 146, page 684, where the author says:

"If, in addition to the drawing and delivery of the bill or check, there are other facts which make out an assignment, and an indorsement on such bill is forged, the drawee making payment thereunder, the holder, whose indorsement was forged, would have a direct right against the drawee, but not because of the drawee's act of attempted payment, but because the holder was an assignee."

The foregoing authorities in my opinion correctly state the law applicable in the present case. The payee of the check has no direct cause of action against the bank, there being no privity of contract between them, but he retains his right against

the drawer, who in turn has his right against the bank. If the drawer assigns his right against the bank to the payee, then the payee may sue the bank and recover against it as the drawer's assignee.

The authorities cited in the majority opinion do not sustain a denial of recovery against the bank in this case. In some of the cases cited it appears that the payees' agents had authority to indorse and cash the checks. For example, in Indemnity Mutual Marine Assurance Co. v. Powell & O'Rourke Grain Co., 216 App. 673, 271 S. W. 538, the Court concluded that the agent who indorsed the checks had authority to do so and therefore held that the debt was discharged when the checks were paid on his indorsement: (See 271 S. W. at page 539.)

"In support of said contention it is urged that upon the undisputed evidence, in this case Decker had no authority, expressed or implied, to indorse and cash the checks in question. We cannot subscribe to this contention. The evidence discloses that the plaintiff appointed Decker its agent for the transaction of all its business or insurance in this state. He was in fact plaintiff's general manager in sole charge of its said business, and the only one whom the public knew. Under the provisions of section 6315, R. S. Mo. 1919, the plaintiff was compelled to transact its insurance business in this state only through Decker, its lawfully constituted and licensed resident agent.

"In view of the authority conferred upon him by his said appointment, and by said section, Decker was a general agent of the plaintiff, and all his actions done in the scope of the business intrusted to him are binding on the plaintiff."

The Court went on to say that even in the absence of authority to indorse the checks, the payment of the checks to the agent constitutes a discharge of the debt. This part of the Court's opinion is unnecessary to the conclusion it reached and, therefore, in my opinion is not persuasive.

The same comment can be made üpon the decision of the New York Appellate Division in Burstein v. Sullivan, 134 App. Div. 623, 119 N. Y. S. 317. There the opinion disclosed that the check was delivered to the creditor's general manager, who indorsed the check with a rubber stamp furnished him by the creditor. While the Court says that the manager had no express authority to indorse checks, it is evident that the Court thought that he had apparent authority to do so. On this point the Court said: (119 N. Y. S. a page 319.)

"While we do not decide the point, it may at least be suggested that the plaintiffs' right to recover, even from the bank, is by no means plain. Melle was not a mere bookkeeper, or clerk, or agent to collect. He was a general manager, having the sole charge of the business, and the only one whom the public knew. He made the indorsement on the check by using a stamp furnished him by the plaintiffs, for the purpose, at least, of signing the firm name to certain papers. I think that any bank, knowing that he was in fact the plaintiffs' manager, having sole charge of their business, conducted in the method disclosed, would have cashed this check upon the indorsement as made without inquiring further into his authority."

In distinguishing earlier cases, the Court says: (119 N. Y. S. at page 318.)

"In respect to the first two cases cited, it is sufficient to say that in neither was the agent who made the indorsement on the check a general manager, having the sole charge of the business; * * *."

Likewise the holdings in Sage v. Burton, 84 Hun. 267, 32 N. Y. S. 1122 and Morrison v. Chapman, 155 App. Div. 509, 140 N. Y. S. 700, can be explained on the basis that the agents involved had general authority, rather than limited authority as here. In the first case, the Court affirmed a judgment against the creditor based on a jury finding showing "general and sweeping authority" in the agent. In the second case, the agent was the manager of the creditor's office and the Court said: (140 N. Y. S. at page 702.)

"As to the general authority of Cooper to receive money from customers, either in check or cash, for transmission to defendants, cannot be seriously disputed. He was put in open management of the branch office, orders given through him were habitually executed by defendants, and payments made to him were habitually received and credited by defendants. So far as concerns the business transacted through his office, he was held out to the world as the accredited agent and representative of the defendants. The plaintiff was fully justified, therefore, in paying his indebtedness to defendants by means of payment to Cooper. Schultheis v. Caughey, 146 App. Div. 102, 130 N. Y. Supp. 373; Fuller v. Municipal Telegraph & Stock Co., 117 App. Div. 352, 102 N. Y. Supp. 154; affirmed, 192 N. Y. 546, 84 N. E. 1113. In taking plaintiff's checks Cooper was therefore acting within the apparent scope of his authority, and it is

immaterial what secret instructions to the contrary, not known to plaintiff, he may have had. Newman v. Lee, 87 App. Div. 116, 84 N. Y. Supp. 106."

These decisions can be sustained on the basis of the rule applicable to general agents, as set out in Restatement, Agency, p. 395, Sec. 161, as follows:

"A general agent for a disclosed or partially disclosed principal subjects his principal to liability for acts done on his account which usually accompany or are incidental to transactions which he is authorized to conduct if, although they are forbidden by the principal, the other party reasonably believes that the agent is authorized to do them and has no notice that the agent is not so authorized."

The ground of the decision in Kansas City, M. & B. R. Co. v. Ivy Leaf Coal Co., 97 Ala. 705, 12 So. 395, is made evident by the following portions of the Court's opinion: (12 So. at page 397.)

"The present case presents no question of a forged indorsement. All the testimony shows that Stepheneson had authority to indorse the check, and to indorse it in the name of Jacobs, the agent. When he took a further step, and demanded and re-reived the money the check called for, from the bank drawn on, he simply transcended his authority but the Alabama National Bank had no knowledge or notice of the limit on Stephenson's authority to indorse. There is nothing in what we have said that in the least antagonized the doctrine that the mere giving of a check does not per se extinguish the debt it is intended to pay. Bank v. Whitman, 94 U. S. 343; Bank v. Miller, 77 Ala. 168. In this case there was not only a check given, but that check was collected by the person authorized to indorse it."

As contrasted with the situations in the cases just cited, in the present case the agent had only a limited authority. He was not shown to be authorized to receive cash; he was only authorized to receive checks made payable to his principal and he was not authorized to indorse or cash them. There is no question of apparent or implied authority as there was in those cases.

The case of Birkett v. Postal Telegraph-Cable Co., 107 App. Div. 115, 94 N. Y. S. 918 (affirmed, 186 N. Y. 591, 79 N. E. 1101) obviously is not in point because it involves the situation where the agent received cash for his principal, and the Court said: (94 N. Y. S. at page 919.)

"He was acting within the scope of his agency in receiving money for the benefit of the defendant."

The foregoing cases also are not persuasive authority here for the further reason that the courts were influenced in at least some of the cases by the fact that under the law of their jurisdictions apparently the payee had a direct right of recovery against the bank. For example, in Morrison v. Chapman, supra, the Court said: (140 N. Y. S. at page 704.)

"On the other hand, defendants apparently have a good cause of action over against the trust companies who accepted the checks and paid the amounts over to Cooper. Burstein v. People's Trust Co., 143 App. Div. 165, 127 N. Y. Supp. 1092. We are therefore unable to discern any principle upon which the judgment appealed from can be affirmed.

This is further made evident in the case of McFadden v. Follrath, 114 Minn. 85, 130 N. W. 542, 37 L. R. A. N. S. 201. There the Court held that the creditor could not recover against the debtor, because the creditor, as payee of the check, had a direct cause of action against the bank which had paid the check on an authorized indorsement of the creditor's agent, by the name of Good. The holding of the Court on this point is stated as follows: (130 N. W. at page 543.)

"Authority given an agent to collect account does not, by implication, give such agent authority to indorse and present for payment checks received by him payable to his principal's order. In this case, Good had no authority, express or implied, to indorse plaintiff's name and cash the check he received from the defendant. The bank on which the check was drawn was bound to pay it to the payee therein named or his order. When the check was presented, therefore, indorsed 'by Henry J. Good, Agent,' the bank was bound to determine, at its peril, that he had authority, as agent, to make such indorsement and receive payment on the check. Ermentrout v. Girard F. & M. Ins. Co., 63 Minn. 305, 65 N. W. 635, 30 L. R. A. 346, 56 Am. St. Rep. 481. Under the facts appearing in this case, the bank, without authority, accepted and paid to Good the check given by defendant. When it so paid such check, and charged the sum so paid to the account of the defendant, such charge being acquiesced in by the defendant, a right of action against the bank accrued in favor of the plaintiff, in the absence of any act or omission on his part which would excuse such payment by the bank, or deprive him of such right of action. * * *

"* * * it is the settled rule in this state that, under the circumstances of this case, an unauthorized payment and subsequent charge to the account of the drawer is a sufficient basis for a liability of the bank to the payee."

The decision in Union House Furnishing Co. v. National Bank of Commerce, (Mo. App.) 53 S. W. (2d) 1067, is based on the same reasoning. There the Court held that the insured as depositor could not recover against the bank for charging his account with the amount of his checks given for premiums which were cashed on unauthorized indorsements of the insurance company's agent, on the ground that the insured's premiums had been paid by the delivery and cashing of the checks. The Court points out that under the decision of Graham v. United States Savings Institution, 46 Mo. 186, the insurance company as payee of the checks had a cause of action against the bank directly for the wrongful payment of the checks.

This basis for holding that the debtor's obligation is discharged by the delivery and cashing of the checks is not present in this case, because the law of Texas has been settled in the case cited in the majority opinion that the creditor-payee has not direct cause of action against the bank for payment of the checks on the unauthorized indorsements. If he had such cause of action, as the law of Missouri and Minnesota, for example, gives him, then it would seem logical to say that the creditor-payee's right against the bank supplants the right against the original debtor and that the debtor is thereby discharged. But the basis for this holding disappears when the law is settled that the payee-creditor has no direct right against the bank.

In Mills v. Hurley Hardware & Furniture Co., 129 Ark. 350, 196 S. W. 121, the decision denying the creditor's right to recover against the debtor can be sustained on the ground that the agent was a superintendent in general charge of the creditor's plant and therefore had apparent although not express authority to indorse and cash the check, and also on the ground that the Court apparently thought that the creditor-payee should proceed against the bank. On the latter point the Court said: (196 S. W. at page 122.)

"As to whether Gowens had authority to present and cash the check and appropriate the funds of his own use were matters wholly between appellant and his agent, Gowens, the First Na-

tional Bank at Batesville, and the local bank at Warren on which the check was drawn."

To summarize, I believe that none of the cases cited in the majority opinion and the texts referred to therein are convincing authority to sustain the denial of the payee-creditor's right to recover against the bank in this case as assignee of the depositor-debtor.

I have not overlooked the argument contained in the majority opinion to the effect that as between the creditor and the debtor, the creditor should suffer for the wrongdoings of his own agent. The reasoning of the majority appears to be that the harm wrought by Akard's unfaithfulness "should fall on the one who selected him and sent him out to receive checks under an implied representation that he was worthy of that office." I do not understand that the majority mean to say that there was any apparent or implied authority in Akard to indorse and cash the checks; certainly there is nothing in the record which would sustain such a holding. The only express or implied representation made by petitioner was that Akard was authorized to take custody of checks made payable to petitioner. It may be assumed that petitioner thought that Akard would be faithful to his trust, but in fact and in law petitioner undertook no responsibility for Akard's unauthorized acts. It is, I believe, an unsound proposition that a principal who appoints an agent acts under the hazard of being submitted to liability to a third party for unauthorized acts of the agent, on the ground that the principal, and not the third party, was responsible for the agent's appointment. This completely eliminates the necessity of proving that the agent acted within the scope of his authority, which as I understand it has uniformly been held to be essential to establish responsibility on the part of the principal.

Furthermore, the real beneficiary of the majority's decision is not the debtor, but the bank, which escapes all liability. The ultimate result of a holding that Akard's receipt of the money from the bank did not discharge the debt would not be that White Auto Store would have to pay the amount of its debt twice. It would only have to pay once, because it could recover from the bank what the bank had wrongfully paid out on unauthorized indorsements, or, as in this case, it could assign its cause of action against the bank to the creditor and let the creditor recover against the bank as assignee. The burden which might be placed on the depositor of asserting its cause of action

against the bank would in the great majority of cases be only very slight; it is only the same burden which a depositor would have in any other case where the bank wrongfully charges a depositor's account; and doubtless in the great majority of cases would not be any expense or litigation at all, if the rule is settled that the bank is liable. On the other hand, under the majority opinion, the bank, which under established rules of law has violated its duty to its depositior, is permitted to escape all liability, while the creditor-payee, who has been guilty of no legal wrong, is made to suffer.

In my opinion, the judgments below should be reversed and judgment should be rendered for petitioner.

Opinion delivered November 10, 1948.

Justices Smedley, Taylor and Garwood, with an additional opinion, join in this dissent.

MR. JUSTICE GARWOOD, dissenting.

While notp resuming to fortify Justice Hart's dissent, which is quite sufficient of itself, the fact that we seem free to choose between two conflicting lines of authority from other states may permit these few observations of my own of a semi-practical or business order.

I think the majority decision, while actually in favor of the particular bank here involved, may do harm to the banking business generally, in that it deprives banks of a responsibility which is rightfully theirs and thereby lowers the value of the good service which careful banks have as their stock in trade. By the same token the decision also strikes a blow at the present convenient system of conducting the great bulk of business by check.

In effect it is now held that where the corporate or other payee of a check allows an employee to have physical access to it,—however incidental the access may be,—the bank on which that check is drawn may with absolute impunity pay the check to that employee, though the latter has no vestige of even apparent authority to receive the money. The payee itself, of course, has no rights against the bank direct, because the bank's duty to pay the true payee is a duty owed only to the drawer-depositor. And we now hold that even the drawer-depositor has no rights against the bank—once the latter has made its wrong-

ful payment to the payee's unauthorized agent. If, as the majority here decides, the drawer-depositor has no cause of action against the bank which he can assign to the payee, obviously he has no cause of action which he could enforce himself. Even if he thought—as well he might and in this case evidently did think—that as between himself, the payee and the bank, the latter should bear the loss for having failed in its elemental duty as a banker on performance of which businessmen are accustomed to rely, still he can now no more call his bank to account than the payee could; and so the bank, which is most to blame, goes scot free. I don't believe the banks of this state want to be placed in any such status of moral coverture or guardianship. It is still more likely that such immunity on the part of drawee banks will result in a loss of public confidence in the present highly useful system of "pay by check" which banks have done so much to promote. If the drawee bank may with immunity pay checks to any servant of the payee who may have incidental physical access to the check, payee must either bond all such employees or we must return to the antiquated system of having the drawer who owes a debt to the payee, bring the cash to the payee's office and get a receipt stamped on his invoice.

In exchange for the above disadvantages, I can see no substantial advantage to be derived from the decision. Certainly, as Justice Hart says, we bestow no useful item of protection on the drawer. Had we treated his debt to the payee as unpaid, as we should have done, and thereby have preserved his right of action against the bank, the drawer would lose nothing, except in the highly unusual case where the bank, after making its unauthorized payment to the payee's agent, fails in the brief period before the drawer has had a chance to make the bank rectify its error by reversing the corresponding charge against the drawer's account. And even if the decision should have—which it does not—the virtue of greater abstract justice through punishing the payee for having an unfaithful employee, future cases may well prove again that such virtues are often worse than illusory. What, for one example, will we do in a case in which the payee has his employee pick up the drawer's check at *the special insistence of and solely for the convenience of the drawer*? Will we then hold that the payee's bill has been discharged by the bank's unauthorized payment to the employee, because the payee is less innocent than the drawer, and again let the admittedly non-innocent bank escape all liability? We probably will not, since the drawer would certainly be no more

innocent than the payee. So, thereafter, instead of the old simple rules for which the minority contends, we will struggle interminably with fine distinctions over relative innocence as between drawer and payee.

Opinion delivered November 10, 1948.